Mark Brnovich
Attorney General

N. Todd McKay, #017369
Assistant Attorney General
1275 West Washington
Phoenix, Arizona 85007-2926
Telephone: (602) 542-7653
Facsimile: (602) 542-7644
Todd.McKay@azag.gov

*Attorneys for Defendant Arizona Senate*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| TALONYA ADAMS | Case No: CV-17-00822-PHX-DLR |
| Plaintiff, | |
| vs. | **MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** |
| ARIZONA SENATE | |
| Defendant. | |

Defendant Arizona Senate, by and through counsel undersigned, respectfully moves to dismiss Plaintiff Talonya Adams' Second Amended Complaint (Doc. 10) pursuant to Fed. R. Civ. P. 12(b)(1) for the reason that this Court lacks subject matter jurisdiction.

As set forth in Ms. Adams' Second Amended Complaint, she was a Policy Advisor for the Arizona Senate who is seeking redress for discrimination and related claims under Title VII. (Doc. 10 at ¶¶ 1, 6). However, as set forth herein, persons chosen by public officials to be on policy staff, or to immediately advise with respect to the exercise of the constitutional or legal powers of the public office, may not seek redress for discrimination and related claims under Title VII in federal District Court, or any other court, but must instead seek redress under the Governmental Employee Rights Act ("GERA") via first seeking administrative relief through the EEOC, and thereafter appealing any adverse determination to the United States Court of Appeals.

Since the time the Arizona Senate filed its Answer (Doc. 12) last month, counsel for the parties have communicated on multiple occasions regarding the matters set forth in this motion in the interest of attempting to resolve these matters informally. However the parties have now reached an impasse necessitating the filing of this formal motion.

**A.   Federal subject matter jurisdiction is a threshold issue, and in adjudicating a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction there is a presumption of a lack of jurisdiction until the plaintiff affirmatively proves otherwise.**

It is axiomatic that federal courts are courts of limited jurisdiction and "possess only that power authorized by Constitution and statute[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause of action lies outside the limited jurisdiction of the federal courts and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Hunter v. Phillip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009). Under Federal Rule of Civil Procedure 12(b)(1), dismissal is proper when subject matter jurisdiction is lacking. See *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*, 583 F.2d 426, 431 n.5 (9th Cir. 1978).

Federal subject matter jurisdiction is a threshold issue that goes to the power of the court to hear the case, so subject matter jurisdiction must exist at the time the action commences. *Orient v. Linus Pauling Institute of Science and Medicine*, 936 F.Supp. 704, 706 (D. Ariz. 1996). Rule 12(b)(1) permits a party to seek dismissal of an action for lack of subject matter jurisdiction. *Id*. citing to Fed.R.Civ.P. 12(b)(1). The court shall dismiss the action "[w]herever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter." *Id*. citing to Fed.R.Civ.P. 12(h)(3).[1] Therefore, a 12(b)(1) motion must be decided before other motions, as they will become moot if dismissal is granted. *Id*. citing to 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 (1990).

---

[1] Fed.R.Civ.P. 12(h)(3) states:  **(3) Lack of Subject-Matter Jurisdiction.** If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.

2

1  In adjudicating a 12(b)(1) motion, a court is not limited to the pleadings, and may
2  properly consider extrinsic evidence. *Id.* citing to *Farr v. United States*, 990 F.2d 451,
3  454 (9th Cir.), cert. denied, 510 U.S. 1023, 126 L.Ed.2d 592, 114 S.Ct. 634 (1993). The
4  plaintiff bears the burden of establishing the existence of subject matter jurisdiction.
5  *Stock West, Inc. v. Confederated Tribes of Colville Reservation*, 873 F.2d 1221, 1225
6  (9th Cir. 1989). Initially, there is a presumption of a lack of jurisdiction until the plaintiff
7  affirmatively proves otherwise. *Id.* Therefore, although the Complaint is to be construed
8  liberally, argumentative inferences favorable to the pleader will not be drawn. *Id.*

**B. Persons chosen by public officials to be on policy staff, or to immediately advise with respect to the exercise of the constitutional or legal powers of the public office, may not seek redress for discrimination and related claims under Title VII in federal district court but must instead seek redress under the GERA via first seeking administrative relief with the EEOC and then appealing to the United States Court of Appeals.**

In Title VII, Congress defined "the term 'employee' [to mean] an individual employed by an employer," but excluded several categories of individuals from "employee" status. *Crain v. Butler*, 419 F.Supp.2d 785, 788 (E.D.N.C. 2005) citing to 42 U.S.C. § 2000e(f). Among those excluded are:

> any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office.

*Id.*

This provision creates three separate categories of exclusion for those hired by elected state "officers": (1) members of the officer's personal staff; (2) appointees on the policy making level; and (3) immediate advisers to the officer concerning the "exercise of the constitutional or legal powers of the office." *Id.*; additionally citing to *Curl v. Reavis*, 740 F.2d 1323, 1328 (4th Cir. 1984) (recognizing these categories as distinct). Congress did not, however, leave those falling within one of these three exclusions without a remedy. *Id.* Rather, if a person falls into one of these three exclusions and

seeks redress, the person must do so under the GERA. *Id*. citing to 42 U.S.C. § 2000e–16c (providing mechanism for relief for those falling within above exclusions).

The GERA is part of the 1991 amendments to the Civil Rights Act. It provides discrimination protections to state and local government employees who are "chosen or appointed by a person elected to public office ... (1) to be a member of the elected official's personal staff; (2) to serve the elected official on the policymaking level; or (3) to serve the elected official as an immediate advisor with respect to the exercise of the constitutional or legal powers of the office." 42 U.S.C. § 2000e-16c(a). *DePriest v. Milligan*, 823 F.3d 1179 n.2 (8th Cir. 2016). The GERA "makes the substantive standards of Title VII applicable to those state employees that are chosen or appointed by an elected official to be a member of his or her personal staff, or to serve as an advisor or as policy level staff." *Stitz v. City of Eureka Springs, Ark.*, 9 F.Supp.2d 1046, 1055 (W.D. Ark. 1998) citing to 1 Lex Larson, *Employment Discrimination* § 4.06 at 4-36 (2d ed. 1997).

Claims brought under the GERA follow a different procedural path than most claims under federal discrimination statutes. *DePriest*, *supra* at n. 3. After an individual has filed a GERA complaint with the EEOC, the EEOC "shall determine whether a violation has occurred and shall set forth its determination in a final order." *Id*. citing 42 U.S.C. § 2000e-16c(b)(1). Judicial review is available for "[a]ny party aggrieved by a final order ... under chapter 158 of Title 28 [ (the Administrative Orders Review Act, 28 U.S.C. §§ 2341–2353) ]." *Id*. citing § 2000e-16c(c). The Administrative Orders Review Act provides judicial review procedures for actions by several federal agencies. *Id*. citing e.g., *Nack v. Walburg*, 715 F.3d 680, 685–86 (8th Cir. 2013) (noting that the Act applies to determining the validity of Federal Communications Commission orders). For the purposes of the GERA, "the [EEOC] shall be an 'agency' as that term is used in [the Act]." *Id*. citing 42 U.S.C. § 2000e-16c(c).

The few courts that have interpreted the GERA have concluded that the courts of appeals, rather than the district courts, have exclusive **jurisdiction** to review final orders

from the EEOC on GERA claims. *Id.* citing *Crain v. Butler*, 419 F.Supp.2d 785, 788 (E.D.N.C. 2005)( Because the GERA mandates that a plaintiff first seek administrative relief with the EEOC and then appeal any adverse administrative decision to the United States Court of Appeals, this court is without **jurisdiction** to hear Koenig's retaliation claim if it is governed by the GERA rather than Title VII); *Stitz v. City of Eureka Springs, Ark.*, 9 F.Supp.2d 1046, 1056 (W.D. Ark. 1998)( More importantly, however, we do not believe that under the GERA, the district court is the court that can exercise judicial review of an EEOC determination. Rather, we believe that the court of appeals has such **jurisdiction**); see also *Nack*, 715 F.3d at 686 ("[T]he court of appeals [has] exclusive **jurisdiction** to determine the validity of [agency] orders." (citing 28 U.S.C. § 2342)).

Like Title VII, GERA is a broad remedial statute, and liberal definitions are similarly necessary to carry out its anti-discrimination and anti-retaliation purposes. *Board of County Com'rs, Fremont County, Colorado v. U.S. EEOC*, 405 F.3d 840 n. 6 (10th Cir. 2005). The remedies available under the GERA are the same as are allowed under Title VII, with two significant exceptions. *Stitz*, *supra*, at 1056. Under the GERA, a plaintiff is not entitled to recover punitive damages and is not entitled to a jury trial. *Id*.

To seek judicial review, the aggrieved individual must "within 60 days after entry [of the final order], file a petition to review the order in the court of appeals wherein venue lies." *DePriest*, *supra* at n. 3 citing to 28 U.S.C. § 2344; and also *B.J. McAdams, Inc. v. I.C.C.*, 551 F.2d 1112, 1114 (8th Cir. 1977) (discussing this provision in the context of another agency covered by the Act).

**C.     Relevant Factual Background**

Again, as set forth in Ms. Adams' Second Amended Complaint, she alleges she was employed with the Arizona Senate as a Policy Advisor from on or around November 2012 through February 2015. (Doc. 10 at ¶¶ 6, 21).

1    Ms. Adams was a member of the Minority Democratic Caucus policy staff
2 ("policy staff") for the entirety of her employment with the Arizona Senate. See
3 Declaration of Wendy Baldo, Arizona Senate Chief of Staff, attached hereto as Exhibit 1,
4 at ¶1. Ms. Adams was also a lawyer, having graduated with a J.D. from the Sandra Day
5 O'Connor College of Law, at Arizona State University, in 2006. (*Id*. at ¶2.)

6    Members of the policy staff have a direct and discrete working relationship with
7 each Democratic Senator individually; however the relationship with the Democratic
8 Minority Leader is the most direct relationship. (*Id*. at ¶3.) Other than their relationship
9 with the Democratic Minority Leader, policy staff work most closely with the
10 Democratic Senators who are members of the committees for which they staff. (*Id*. at
11 ¶4.) However, policy staff have the same discrete relationship with each Democratic
12 Senator in drafting bills in their policy areas, preparing amendments for Committee of
13 the Whole[2] and advising Senators on the policy ramifications of bills moving through the
14 process and to a floor vote. (*Id*. at ¶5.) Policy staff also advise Senators in the
15 performance of their duty to vote on each bill in committee and on the floor, and on their
16 vote when enacting the state budget. (*Id*. at ¶6.)

17    In late 2012, the then Democratic Minority Leader directed that Ms. Adams be
18 invited to apply for a policy staff position. (*Id*. at ¶7.) The hiring panel for Ms. Adams
19 consisted of the (i) Democratic Minority Leader, (ii) Assistant Minority Leader, (iii)
20 Democratic Caucus Chief of Staff, and (iv) Democratic Caucus Senior Attorney and
21 Policy Advisor. (*Id*. at ¶8.) The Democratic Minority Leader then made the final
22 decision to select Ms. Adams for the policy staff position. (*Id*. at ¶9.) This is typical of
23 how the Minority Caucus policy staff hiring process works. (*Id*. at ¶10.)

24    Arizona Senate records reflect Ms. Adams start date was December 20, 2012. (*Id*.
25 at ¶11.)

---

[2] Committee of the Whole is the floor session where any member can propose an amendment to a bill and where amendments adopted in committee are voted on by the full Senate. It is always the full Senate "sitting as in Committee of the Whole."

**D.   As an Arizona Senate policy staff member, Ms. Adams may not seek redress under Title VII here, and instead must do so under the GERA.**

At a bare minimum, as a policy staff member, Ms. Adams served the Minority Leader and Democratic Senators on the policymaking level.

However, as a policy staff member, and also a lawyer, Ms. Adams also served the Minority Leader and Democratic Senators as an immediate advisor with respect to the exercise of the constitutional or legal powers of the public office as well.

Accordingly, Ms. Adams may not seek redress for her discrimination and related claims under Title VII in this Court, but must instead do so under the GERA.

## **CONCLUSION**

For the reasons set forth herein, the Arizona Senate respectfully requests dismissal of Ms. Adams' Second Amended Complaint for lack of subject matter jurisdiction.

DATED this 19th day of May, 2017.

    Mark Brnovich
    Attorney General

    s/ N. Todd McKay
    N. Todd McKay
    Assistant Attorney General
    *Attorneys for Defendant Arizona Senate*

I certify that I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following this 19th day of May, 2017:

Guy D. Knoller
Law Offices of Guy David Knoller, P.L.L.C.
7321 N. 16th Street
Phoenix, Arizona 85020
Attorney for Plaintiff

s/ Deb Sawyer
#5966997