### UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

_____

| | | |
|---|---|---|
| Talonya Adams, | ) | |
| | ) | No. **CV-17-00822-PHX-DLR** |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Phoenix, Arizona |
| | ) | November 22, 2017 |
| **Arizona Senate,** | ) | 8:59 a.m. |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### BEFORE:  THE HONORABLE DOUGLAS L. RAYES, JUDGE

### <u>REPORTER'S TRANSCRIPT OF PROCEEDINGS</u>

### <u>TELEPHONIC DISCOVERY HEARING</u>

**TELEPHONIC APPEARANCES:**
For the Plaintiff:
    **Talonya Adams**
    In propria persona
    40 North Central Avenue, Suite 1400
    Phoenix, AZ 85004

For the Defendant:
    Office of the Attorney General
    By:  **N. Todd McKay,** Esq.
    1275 West Washington Street
    Phoenix, AZ 85007

Official Court Reporter:
Jennifer A. Pancratz, RMR, CRR, FCRR, CRC
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 42
Phoenix, Arizona 85003-2151
(602) 322-7198

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

**P R O C E E D I N G S**

1

2        (Proceedings commenced at 8:59 a.m.)

3        COURTROOM DEPUTY:  Civil Case No. 17-822, Adams versus

4  Arizona Senate, on for a telephonic discovery hearing.

5        Would the parties please announce for the record.

6        MS. ADAMS:  Thank you.  My name is Talonya Adams.  I

7  am the plaintiff pro se.

8        MR. MCKAY:  And Todd McKay on behalf of Defendant

9  Arizona Senate.

10        THE COURT:  Good morning.

11        MR. MCKAY:  Good morning.

12        THE COURT:  I just this morning saw the defendant's

13  statement regarding issues, and I just had a chance to look at

14  it.

15        Has there been a lack of communication, apparently,

16  before we had this conference call?

17        MS. ADAMS:  Yes, Your Honor.

18        MR. MCKAY:  I think it's kind of laid out, yes.

19        THE COURT:  All right.  Well, you know, my preference

20  is that you guys talk first before I get involved.  Have you

21  not talked about this?

22        MR. MCKAY:  My position is it seems like we're talking

23  about five requests for production responses, numbers -- I

24  think it's 2, 3, 4, 5, and 8.  And I'd indicated to Ms. Adams

25  last Monday that I was working with the Senate on these things

1    and anticipated having responses for her within the week, and I

2    did.  But in the meantime, she called this hearing.  So, I

3    mean, my sense is it wasn't ripe at the time this hearing was

4    called.

5              THE COURT:  Okay.  Ms. Adams?

6              MS. ADAMS:  From my perspective, Your Honor, I

7    think -- I think that's incorrect.  I have received plaintiff's

8    initial protocol and disclosures.  They were mailed on

9    August 29th, as stated in my response yesterday.

10             All of the discovery, first, he doesn't email me, so I

11   don't have an electronic copy.  It's sent in the mail.  This is

12   after five -- I'm sorry, Your Honor.  I'm really sorry.  I'm

13   very nervous, and I apologize for that.  I will try to be more

14   concise and to the point.

15             Long story short, at this -- today, less than 90 days

16   of discovery has occurred.  Plaintiff's counsel has responded

17   to the initial discovery disclosures, many of which stating

18   they are nonapplicable, the mandatory discovery disclosures,

19   disclosures that plaintiff's counsel and Guy Knoller -- Guy

20   Knoller and defendant's counsel asserted to the Court at the

21   June 14th hearing had already occurred.

22             So from less than 90 days, a 90-day window, I have

23   been subjected to meaningless discovery disclosures and delays

24   by defendant's counsel.  He has never returned a call I've made

25   to him.  He has never responded to a request to meet with a

1   date and a time.

2          In August we agreed -- we spoke.  On August 8th, he

3   agreed to a protective order.  He wanted to see if we could

4   schedule -- stated we needed to schedule a settlement

5   conference in August.  I agreed to that.  He wanted discovery

6   to be delayed for a fifth time.  I agreed to that.

7          The parties agreed that plaintiff would present a

8   settlement offer on or before a certain date.  Five days would

9   expire, defendant would respond in five days upon receipt, and

10  then the parties would, you know, negotiate from there and/or

11  extend the discovery on or before August 29.

12         I drafted settlement pursuant to the agreement.

13  There's no settlement statement.  There's no information.

14  There's no discovery.  Not one piece of discovery has been

15  shared at this point.  I remitted by the deadline.  Plaintiff's

16  counsel hasn't.  Five days expire.  And after-hours, the

17  plaintiff writes -- I'm sorry, strike that.

18         Defendant's counsel, Mr. McKay, writes plaintiff's

19  counsel back and -- plaintiff back and says:  Yeah, no, there's

20  no deal.  There's nothing here.  This case is basically worth

21  nothing.

22         THE COURT:  So --

23         MS. ADAMS:  Then they drafted a joint report to me

24  stating, you know, three threads of a paragraph saying:

25  Parties attempts to have a settlement conference were

1   nonsuccessful.  And asked me to sign that as factually true.

2          I disagreed, and two calls ensued after that.  I have

3   not had a conversation or heard Mr. McKay's voice until this

4   moment, from then until this moment.

5          I have called him and said:  All of the discovery that

6   you have provided me to date is duplicate.

7          And he has responded with second and third

8   supplemental amended discovery productions indicating:

9   Plaintiff asked for public records request, and that's what she

10  got.

11         Plaintiff had an EEOC file.  The EEOC file is 301

12  pages in total.  The plaintiff's rendition of the EEOC file in

13  the 712 pages that had been produced prior to this month, 503

14  of that 700 is the EEOC file and duplicates and blank pages.

15  100, or maybe 98 to a hundred additional pages is the 2003

16  Arizona manual handbook.  There's a 2016 completely irrelevant

17  handbook that is about 40 of those remaining 100 pages.  And

18  then 30-ish or so pages of a handbook that plaintiff's counsel

19  alleges was in play at the time in which Ms. Adams was a policy

20  adviser.

21         The remainder of those documents are barely documents

22  plaintiff did not already have in her possession.  Plaintiff

23  wrote to Mr. McKay on several times, and the dates -- I'm happy

24  to recite the dates.  The dates are there.  The emails, I'm

25  happy to produce the emails.  If given the opportunity to

1    produce 15 pages before the Court before this hearing,

2    plaintiff certainly would have liked that opportunity,

3    especially being pro se and a nonlitigant.

4         Again and again and again and again, Mr. McKay could

5    not respond.  Plaintiff's emails were either met with

6    silence -- nothing at all from this man.  Calls, never

7    returned.  Or they were responded back -- he did send a long

8    response back telling us, you know:  Plaintiff doesn't need to

9    certify.  The challenge with the certifications is pursuant to

10   the -- you know, to the rules of professional -- strike that,

11   my goodness -- pursuant to --

12        Plaintiff's argument is that given the fact of the

13   magnitude of omissions that the Senate is saying it's having,

14   Senate is saying there doesn't exist any personnel file --

15   there's personnel files.  A job description for plaintiff while

16   plaintiff was there doesn't exist.  Compensation,

17   determinations or records, those things do not exist.

18        The Senate is alleging that Ms. Adams was fired for a

19   litany of pretty slanderous things, all that are very

20   fact-intensive, and yet I can get no documents that I do not

21   already have in my possession.  And defense counsel has been

22   made aware of this.  In September, immediately, two and three

23   and four times.  In October, two and three and four times.

24        In October, he did write me back and say:  Hey, look.

25   We don't want to get a U.S. federal judge talking about our

1    discovery.

2          And I said:  Fair enough.  I share that ambition.  But

3    I also need to be able to support my claims and have meaningful

4    discovery.  And what is presented to date is none of that.  And

5    all of the emails that have been shared are emails to which

6    plaintiff is already a party.

7          There is no -- defense alleges there is no third party

8    emails regarding plaintiff's termination.  Plaintiff was

9    terminated while on emergency leave, out of state, authorized

10   by the Senate, to care for her son.

11         Defense has now alleged plaintiff was terminated for

12   job abandonment, unreliability, all kinds of incredible and

13   egregious things that are really fact-intensive.  None of which

14   were -- unemployment wasn't objected.  Right?

15         And so plaintiff's in a situation where she's pro se.

16   She's trying to comply.  The Court's scheduling order dated

17   June 15th says the deadline for initial disclosures had already

18   expired, because that's what both counsel stood in that

19   courtroom and verbally said on the record, when in fact, it

20   only occurred less than 90 days ago, in September 2017.

21         THE COURT:  Well, Ms. Adams --

22         MS. ADAMS:  The deadline --

23         THE COURT:  Ms. Adams, let me interrupt you.  I

24   apologize.  But there's just so much being said here, I'm

25   having a hard time wrapping my brain around it.

1          MS. ADAMS:  Okay.

2          THE COURT:  Let me just focus you.

3          Are there specific discovery items that you've

4     requested that you haven't received?

5          MS. ADAMS:  Yes.

6          THE COURT:  What are they?

7          MS. ADAMS:  Okay.  I think one of the most significant

8     discovery items that I've requested that I have not received

9     are the cell phone records and the text messages and the

10    voicemails regarding myself and my termination as it relates to

11    parties at the Senate.  It's the most significant.

12         MR. MCKAY:  I can address that.

13         THE COURT:  Let me -- Mr. McKay, let me first ask you,

14    is it true that she can't get ahold of you by phone?

15         MR. MCKAY:  It's true that I have attempted --

16         THE COURT:  Let me -- stop.

17         Have you ever spoken to her by phone?

18         MR. MCKAY:  I have spoken to her by phone, but since

19    our phone conversations went sideways each time, thus far we've

20    communicated and made the sincere efforts to resolve discovery

21    disputes via email.  So it's documented.

22         Hopefully we can work things through, but to the

23    extent that we need the Court's involvement, we have a record

24    of the things that we've discussed, the things that I've said,

25    the things that she's said, the things that we've done, and

1    what the issues are.

2         MS. ADAMS:  And, Your Honor, he has never responded to

3    a phone or voicemail.  "Ms. Adams, I've received your voicemail

4    concerning A, B, and C.  Here is my response."  He's never

5    responded.

6         THE COURT:  Okay.  Mr. McKay -- it sounds like he's

7    done that, haven't you, Mr. McKay?

8         MR. MCKAY:  I've made an extensive record, and I cited

9    her case law --

10        THE COURT:  Stop, stop, stop.

11        MR. MCKAY:  Yes.

12        THE COURT:  What she's asking is that when she calls

13   you and leaves a voicemail, that your response address her

14   voicemail specifically.  Is that what you do?

15        MR. MCKAY:  Yes.  I communicate in writing now so that

16   we have a record.

17        THE COURT:  Okay.  But here's what her concern is.

18   She says:  I call you and ask about items A, B, C, and D, and I

19   get these emails that don't talk about that.  You talk about

20   something different, and you don't say what you're responding

21   to.

22        I think if you guys aren't going to talk by phone, you

23   need to specifically identify, when you email her, what you are

24   addressing and what you're responding to.  Would you do that,

25   please?

1      MR. MCKAY:  Yes.  And I have, Your Honor.  The 24

2  separate dates of emails that I've indicated in defendant's

3  statement regarding issues are exactly that.

4      THE COURT:  Okay.  Now --

5      MS. ADAMS:  And, Your Honor, I'd like --

6      THE COURT:  No, Ms. Adams, we're not talking right

7  now.  I'm talking to Mr. McKay.  I'll give you in a chance in a

8  minute.

9      MS. ADAMS:  Yes, Your Honor.

10      THE COURT:  All right.  Mr. McKay, tell me, what's

11  your response to her concerns about the specific items of

12  discovery she's requested?

13      MR. MCKAY:  Well, the cell phone issue, she's never

14  brought up before, so we haven't had any good faith discussions

15  on that.  But I just know from going through the process, and

16  she knows from being a Senate employee, that the Senate doesn't

17  issue cell phones to its employees.  Thus, the Senate was never

18  in possession, custody, or control of text messages or cell

19  phone activity.

20      THE COURT:  Okay.  So --

21      MR. MCKAY:  So that was the case back when the EEOC

22  proceedings were going on, and that's the case today.

23      THE COURT:  All right.  Is that your -- does that

24  cover everything she just mentioned?

25      MR. MCKAY:  Yes.  She said that was her most important

1    issue.

2              THE COURT:  Okay.

3              All right.  Ms. Adams, do you want to respond to that?

4              MS. ADAMS:  Yes, Your Honor.

5              Two things.  One, as it relates to the telephone

6    calls, Mr. McKay has never responded, to my knowledge, in email

7    to a telephone call.  He doesn't respond.

8              THE COURT:  Okay.  Well, stop.  Stop.

9              MS. ADAMS:  Most of the --

10             THE COURT:  Stop, stop, stop.

11             From now on, Mr. McKay, you will respond to her

12   telephone calls with an email identifying the phone call you're

13   responding to, the issues she's raised, and your response to

14   those issues.  Fair?

15             MR. MCKAY:  Fair.

16             THE COURT:  All right.  Since you guys won't talk, we

17   need to have a record of what the response is to that so

18   Ms. Adams will understand that -- what your response is

19   addressing.

20             Okay.  Now, going forward, that should handle that

21   problem.  All right, Ms. Adams?

22             MS. ADAMS:  Thank you.

23             THE COURT:  Go ahead.

24             MS. ADAMS:  Thank you, Your Honor.

25             In regards to the EEOC request for emails, text

```
 1    messages, and voice messages regarding Ms. Adams'
 2    termination -- speaking in third person is a little bit easier
 3    sometimes -- the Senate didn't provide the response Mr. McKay
 4    provided.  The Senate just simply didn't respond.
 5              As it relates to whether or not the Senate issues cell
 6    phone records, I think that's -- that's secondary to the point
 7    that after this telephonic conference was ordered, Mr. McKay
 8    was able to find and reproduce additional records that he said
 9    didn't exist.
10              THE COURT:  Well, let me --
11              MS. ADAMS:  In those records --
12              THE COURT:  Yeah, go ahead.
13              MS. ADAMS:  -- there is communiqué -- I'm sorry?
14              THE COURT:  Go ahead.  I'm sorry.
15              MS. ADAMS:  There is communiqué evidencing text
16    messages, the most significant of which is on February 13,
17    2015, Ms. Adams for the first time after working for the Senate
18    in 2012, asked for a raise, after an article had went out
19    saying everybody else got raises.  That same day, her medical
20    benefits were terminated.
21              She requested to meet with leadership, and leadership
22    text -- Katie Hobbs sent an email to the administrative staff
23    saying:  I've text all of the members regarding Talonya's
24    response.  Do not meet with her.  Do not respond to her.
25              THE COURT:  Okay.  All right.
```

```
1           MS. ADAMS:  Those messages are relevant.

2           THE COURT:  All right.  Mr. McKay, are members of the

3    Senate using their personal emails to do public business like

4    that?

5           MR. MCKAY:  Personal cell phones.

6           THE COURT:  All right.  Well, then they need to

7    produce those emails and texts.  Those are related to the

8    public business involving this case.

9           MR. MCKAY:  Well, this was never in the Senate's

10   possession, custody, or control.  These are from three years

11   ago.

12          THE COURT:  Well, I don't know what to tell you.  I

13   mean --

14          MR. MCKAY:  I mean, there was no duty to preserve --

15          THE COURT:  Well, stop.  Stop.

16          MR. MCKAY:  -- at the time.

17          THE COURT:  I'm not saying -- if they don't exist, you

18   can't produce them.  I thought the response was:  They're not

19   Senate property; therefore, we can't produce them.

20          MR. MCKAY:  No.  I'm saying the Senate never had

21   possession, custody, or control.  There was never any duty to

22   preserve, and the first time, you know -- I mean, this --

23          THE COURT:  Okay.  Stop.

24          MR. MCKAY:  These are nonissues.

25          THE COURT:  We got a different issue.
```

```
1              MR. MCKAY:  Yeah.

2              THE COURT:  We've got third party discovery, sounds

3    like.

4              MR. MCKAY:  Exactly.

5              THE COURT:  So what, Ms. Adams, you're going to have

6    to do is if -- unless you've got some way of tying those texts,

7    those cell phones and that property to the Senate, who you've

8    sued -- you haven't sued the individual members, so they're not

9    parties.  You'd have to subpoena those cell phones and emails

10   to get that information, because the Senate doesn't have

11   control over them.

12             MR. MCKAY:  And, honestly, the information that she

13   says she's seeking right now is information that's otherwise

14   available and been produced in emails.  So this is duplicative

15   and unnecessary.

16             THE COURT:  All right.

17             MS. ADAMS:  I don't believe that to be true, Your

18   Honor.

19             THE COURT:  All right.  Well --

20             MS. ADAMS:  I am happy to subpoena the cell phone

21   carriers and the Senate members themselves.

22             THE COURT:  Okay.  You know, there -- I'm going to

23   need briefing on this, because there's too many issues here for

24   us to handle over the phone.

25             Ms. Adams, you can file your motion to compel, and
```

indicate specifically what you are asking to be compelled, why it's being compelled as far as what legal support you have for requesting that, and the basis you have to believe that's in the defendant's possession.

MS. ADAMS: Okay. I am happy to do that, Your Honor.

THE COURT: All right. Can you get that in in two weeks? Or in ten days? Let's make it -- today is the 22nd. Can you get it in by the 2nd of December?

MS. ADAMS: Yes, sir.

COURTROOM DEPUTY: That's a Saturday.

THE COURT: Make that the 1st of December. December 1st?

MS. ADAMS: Yes, sir.

THE COURT: Okay.

MR. MCKAY: And, Your Honor?

THE COURT: Yeah.

MR. MCKAY: I'm just going to note, as long as we're trying to get responses, there's ten pretty basic interrogatories that she hasn't responded to.

THE COURT: Hang on a second. Whoa, whoa. I'm not done yet.

MR. MCKAY: Okay.

THE COURT: And, Mr. McKay, your response will be due on December 8th.

MR. MCKAY: I'm actually in San Francisco for a Ninth

```
1    Circuit oral argument that week.  Could it possibly be at the
2    end of that week?
3              THE COURT:  Okay.  December 12th.
4              MR. MCKAY:  The 12th?  Thank you.
5              THE COURT:  December 12th.  Okay.
6         All right.  Now, Mr. McKay, did you say -- did you
7    have something that you had indicated would be on this phone
8    call that we were going to talk about this morning that you
9    want to talk about?  I didn't know anything else was on the
10   agenda.
11             MR. MCKAY:  I'm just saying, in my -- my sense of this
12   is if there was going to be any sort of a discovery dispute
13   conference call involving the Court, it was regarding
14   plaintiff's failures.  But we all hate to do these, and so the
15   hope was that we could just continue to work informally.
16        But as long as we're here, I'm not getting the
17   responses.  They're three months overdue.  So I'd like an order
18   to the effect of:  Please answer.  These are basic, and they
19   relate to the allegations and requests in your complaint.
20             THE COURT:  Okay.  I'm not sure what you're talking
21   about.  Responses to what?
22             MR. MCKAY:  Well, I've got interrogatories.  I got
23   five interrogatories that relate to two paragraphs of her
24   complaint.
25             THE COURT:  Stop, stop.
```

1          MR. MCKAY:  I've got --

2          THE COURT:  Whoa, whoa, whoa.  All I want to know is

3     what they are.  Are they interrogatories, requests for

4     production?  What are we talking about?

5          MR. MCKAY:  We're talking about interrogatories,

6     requests for production, and then the couple subsections of the

7     initial discovery protocol document disclosures that are --

8          THE COURT:  You guys apparently have not discussed

9     this since you don't talk, so I'm going to order you -- I want

10    you to talk and then work this out, and then we'll get back on

11    the phone if you can't work this out.  This wasn't --

12         MR. MCKAY:  Okay.  But this --

13         THE COURT:  This wasn't on the agenda for today.

14         MR. MCKAY:  Fair enough.

15         THE COURT:  All right?

16         MS. ADAMS:  Your Honor?

17         THE COURT:  What?

18         MS. ADAMS:  On August 8th, parties agreed to an order

19    of protection using the model language.

20         MR. MCKAY:  We did not.

21         MS. ADAMS:  Okay.  There is -- there is a desire, at

22    least on plaintiff's side, to enter a protection order using

23    the model language to help advance and accelerate some of the

24    discovery.  Given that today, November 22nd, is the 45th

25    pre-discovery deadline for written discovery disclosures,

1  plaintiff would ask that an order of protection using the model

2  language be entered.

3          MR. MCKAY:  Can you put that in your motion to compel?

4          THE COURT:  Yeah, add that in there, because I'm not

5  prepared to talk about an order of protection today.  That was

6  not on the list of things for our discussion.  Okay?

7          MR. MCKAY:  And I guess I would just note, Your Honor,

8  that plaintiff had stipulated that Exhibit B to our Document 43

9  filing yesterday set forth the issues for today.  And in

10 Exhibit B, it sets forth defendant's issues with plaintiff's

11 insufficient discovery responses and disclosures.

12         THE COURT:  Okay.  All right.  Then they are on the

13 agenda.

14         Ms. Adams, you want to tell us why you haven't

15 responded?

16         MS. ADAMS:  Sure.  Sure.  Let me -- sorry.  I'm sorry

17 for the delayed response.

18         My thought is, is if we're getting into the specific

19 discovery, I certainly would like to assert all of the

20 discovery raised on the agenda today as well.

21         THE COURT:  No.  Would you respond, please?

22         MS. ADAMS:  Yes.

23         THE COURT:  He said -- he's talking about your lack of

24 response to his discovery requests.

25         MS. ADAMS:  Fair enough.

1          THE COURT:  All I want to know is -- all I want to

2     know is, why haven't -- or have you responded; and if not, why

3     not?

4          MS. ADAMS:  Sure.  Thank you, Your Honor.

5          As it relates to the defendant's requests for

6     production of things for plaintiff to produce, the first

7     request is a request of all federal and state taxes.  An

8     objection has been noted, and there's no protection order.

9          Second request is all documents relating to other

10    income.  A response was given.  There was none not reflected in

11    the tax return documents.  None.

12         Request for Production No. 3 states:  Produce copies

13    of documents relating to your efforts to find employment.

14         Response has been given, and I do have some

15    supplemental response that I can provide to plaintiff by end of

16    day that relates to that one.

17         Request for Production No. 4:  Produce all documents

18    relating to your claim for damages or other reliefs in this

19    action.

20         The challenge here is the relief requested was

21    reinstatement.  There also is monetary damages.  Those are

22    really hard to calculate when you can get zero documents

23    relating to similarly situated parties.  And so that remains

24    pending.

25         THE COURT:  If you're claiming damages --

1          MS. ADAMS:  Yes.

2          THE COURT:  -- you need to have some evidence to show

3     what your loss of damages are.  You know, whatever your damages

4     are, what your losses are.  And if there are some exhibits that

5     support that, whether it comes -- wherever it comes from, you

6     need to support that.

7          MS. ADAMS:  Okay.

8          THE COURT:  All right?  I mean, that's a basic thing

9     in a lawsuit like this.  You have the burden of proof, and

10    they're entitled to see what your evidence is on what your

11    damages are.

12         MS. ADAMS:  Right.  I understand, Your Honor.

13         THE COURT:  Some people claim emotional distress, and

14    they produce records from their psychologist.  Some people

15    claim that they lost income, and they show what they made in

16    the past.  You know, those are the kind of things that show

17    damages in this type of case.

18         MS. ADAMS:  Very good.

19         THE COURT:  All right.  So you --

20         MS. ADAMS:  Okay.

21         THE COURT:  You need to get that to him.

22         MS. ADAMS:  Okay.

23         THE COURT:  All right.  What else?

24         MS. ADAMS:  I think they're requesting medical records

25    from my son.  I think they've no longer requested that.

1           Transcripts from my school --

2           MR. MCKAY:  No, no, no.  We've got -- I've got the

3   numbers there.  We're done with requests for production.  That

4   was it.  1, 2, 3, 4.

5           MS. ADAMS:  Okay.

6           MR. MCKAY:  So now we're on to interrogatories.

7           MS. ADAMS:  Interrogatories.

8           MR. MCKAY:  So 4, 5, 6, 7 deal with your --

9   paragraphs 9 and 10 of your complaint.

10          MS. ADAMS:  4, 5, 6, and 7.  Let me -- here we go.

11          Okay.  So job responsibilities were the same.  Here,

12  Senate says they don't even have -- they can't even define the

13  job responsibility for Ms. Adams, yet the Senate is asking

14  Ms. Adams to provide the job responsibility for herself and for

15  others.

16          That was responded to.  And perhaps defendant doesn't

17  appreciate the response, but Senate is in the best position to

18  know what the job responsibilities were as a state agency

19  hiring W-2 employees.

20          MR. MCKAY:  These are simple requests.

21          THE COURT:  Well, I think he's entitled to your

22  understanding of what your job responsibilities were.

23          MS. ADAMS:  Okay.

24          THE COURT:  Is that what the request was, Mr. McKay?

25          MR. MCKAY:  Yeah.  In paragraph 9, she says something

1   to the effect of:  The job responsibilities were the same.  So

2   she says:  Although the job responsibilities were the same,

3   plaintiff had a heavier workload and more challenging committee

4   assignments.

5           So it's just that.  It's just what -- please explain.

6           THE COURT:  That's a fair question to you, Ms. Adams.

7   You've made some allegations about your job responsibilities

8   and that they're heavier than others, and they're entitled to

9   understand what it is -- what responsibilities they were that

10  caused you to feel that way.

11          So --

12          MS. ADAMS:  Okay.

13          THE COURT:  You need to answer that.

14          MS. ADAMS:  Okay.

15          MR. MCKAY:  Okay.  That covers 4, 5, 6, 7.

16          We can just move on to 13 and 15.

17          MS. ADAMS:  13 is the first claim of relief, and that

18  was referenced.  Plaintiff -- defense is asking for full and

19  complete information.  I don't have full and complete

20  information.  I have what I have to date and --

21          THE COURT:  Okay, stop.  Stop, stop, stop.

22          Full and complete information about what?

23          MR. MCKAY:  Cell phones.

24          MS. ADAMS:  This is with respect to your alleged basis

25  for your first claim of relief, racial discrimination in

1    violation of Title VII, as stated in plaintiff's second amended

2    complaint.

3            THE COURT:  Okay.  So you need to answer that and tell

4    him what -- why is it you feel that there's been racial

5    discrimination, and what evidence are you going to use to prove

6    it.  That's a fair question.

7            MS. ADAMS:  Okay.  And 15 is identical with the

8    exception that it's the third -- third claim of relief, sexual

9    discrimination, Title VII.

10           THE COURT:  Okay.  Look, let me give you a heads-up,

11   Ms. Adams.  Under our rules, if you don't disclose some stuff,

12   there could be some consequences and you might not be allowed

13   to put that evidence in.

14           So it's usually -- I see the good lawyers who litigate

15   these cases overdisclose.  They disclose everything they can

16   possibly think of as the basis for their claim so no one can

17   come back later and say:  Hey, this hasn't been disclosed.  Now

18   you can't use it at trial.

19           So it doesn't help you not to disclose that.  It hurts

20   you.  So I would suggest you need to -- plus, when it comes to

21   purposes of discussing settlement, the more the other side

22   knows about your case, the better off it usually is for you, if

23   they understand that, hey, she really has something here.

24   Right now they might think you're hiding something.  I don't

25   know.

1          I'm just looking at this from a 40,000-foot view, and

2     it's -- the big picture is normally the plaintiff is better off

3     disclosing as much as they can to let the other side know how

4     strong their case is.

5          MS. ADAMS:  I appreciate that, Your Honor.

6          THE COURT:  All right?  Okay.

7          MR. MCKAY:  It's just 18, 19, 20 are the last

8     interrogatories.

9          MS. ADAMS:  Oh.  And, Your Honor, I would like to have

10    the same benefit to go through my numbers.

11         THE COURT:  I'm sorry.  I didn't understand what you

12    just said.

13         MS. ADAMS:  I think Mr. McKay is saying there's also

14    additional numbers in the interrogatories that he's looking for

15    a response on on the record.  I would like the benefit to go

16    through the initial protocols referenced in my filing as well.

17         MR. MCKAY:  That's not in Exhibit B.

18         THE COURT:  I don't know what you guys are talking

19    about.  You're just --

20         Let's do this.  Ms. McKay, get your answers to the

21    interrogatories in.  Is there something that -- I'm sorry,

22    Ms. Adams.

23         Mr. McKay, what do the next three interrogatories ask

24    that you're asking?

25         MR. MCKAY:  The last three are 18, 19, and 20.  And it

1   just has to do with job history and income and job search

2   efforts.  She's asked for hard damages, lost wages, including

3   job search expenses.

4          THE COURT:  Okay.  Those sound like ordinary

5   interrogatories in a case like this.  Is there some reason why

6   you can't answer those, Ms. Adams?

7          MS. ADAMS:  Your Honor, I -- yes, I can answer them,

8   and I would like the opportunity to answer them under a

9   protective order.  Can I -- can I answer them in confidence?

10         THE COURT:  Well, if he won't stipulate to one, you

11  can file a motion for one on your own.

12         MS. ADAMS:  Okay.

13         THE COURT:  If this is -- if this is confidential,

14  privileged, private information and you don't want it disclosed

15  publicly, you can file a motion.  I'm not promising you I'm

16  going to grant it.  I'll have to take a look at your motion.

17  But if there's no stipulation, you can file your motion to have

18  it put under seal.  Okay?

19         MS. ADAMS:  Okay.

20         THE COURT:  All right.

21         MR. MCKAY:  And I believe the initial discovery

22  protocol disclosures were pretty much addressing the same

23  effort -- the same issues.  It was subsections F and H, which

24  deal with job search efforts and a copy of the current résumé.

25         MS. ADAMS:  And I believe I provided a copy of the

1  current résumé.  I'm actually quite sure of it.  If not, I can

2  send that to counsel within the hour.

3          MR. MCKAY:  Okay.  That's fine.

4          THE COURT:  Well, do that.

5          MR. MCKAY:  Appreciate it.

6          THE COURT:  You guys need to get this thing worked out

7  with the discovery.

8          What I'm hearing, though, Ms. Adams, is that the

9  requests that were sent to you were pretty ordinary requests.

10  There's nothing extraordinary that I heard there, and they're

11  just asking about your case.  And you're better off --

12          MS. ADAMS:  And Mr. McKay has stricken some of the

13  extraordinary ones, so I do appreciate that.

14          THE COURT:  Okay.

15          MS. ADAMS:  There are also, Your Honor, several things

16  that defendant has not responded to.  If we're in the initial

17  protocols -- and this was noted for this hearing today -- in

18  the protocol disclosures, subsections E, F, K, and L --

19          MR. MCKAY:  These were first raised in your statement

20  of facts yesterday.  This is nothing that we've even gone

21  through together.

22          MS. ADAMS:  Your Honor, we've just gone over this same

23  document as it relates to plaintiff.

24          THE COURT:  Let me ask you this.  Mr. McKay, would you

25  talk to her and try to resolve this like we do normally in a

1    lawsuit like this?

2              MR. MCKAY:  Love to.

3              THE COURT:  Because she's -- she's trying to get ahold

4    of you, and you're responding by email.  I think a conversation

5    over the phone would be helpful.

6              And, Ms. Adams, you've got to let him -- you've got to

7    listen to what he has to say, too, though.  Two people have

8    to -- to communicate, they have to listen.  And listening's

9    going to be a big thing in this communication.  Okay?

10             MS. ADAMS:  I agree, Your Honor.  I would -- part of

11   the court order, I would like that to be scheduled.  Because I

12   can't -- you know, they're responding "not applicable."

13   Documents concerning my termination are -- you know --

14             THE COURT:  Let me just tell you, Ms. Adams, in this

15   conversation, it's been difficult for me because you keep

16   jumping around.

17             MS. ADAMS:  Right.

18             THE COURT:  So I think --

19             MS. ADAMS:  I agree.

20             THE COURT:  I think before you have a conversation

21   with Mr. McKay, I think it would help if you had a list of

22   things you want to cover, and stick with that list instead

23   of -- and be specific, because the generalities and the

24   ambiguities are really hard to understand from my point of

25   view.  And I don't know sometimes what you're even addressing.

```
1              So --
2              MR. MCKAY:  Yeah.  And I will say that we've attempted
3    that.  After our -- I think it was second round of supplemental
4    disclosures around the 14th of September, the following week,
5    we had just that conversation via email, of course, but, you
6    know:  Please list out, you know, all the potential issues that
7    you see, and we'll address them sort of, you know, seriatim,
8    which we did over the course of the next couple weeks.
9              And then at the end of last month, she had some new
10   issues, and she listed those out again, and so none of those
11   have been addressed.  So we do have that capability.
12             THE COURT:  Okay.
13             MS. ADAMS:  And, Your Honor, I want to say on -- he
14   asked that I list them out.  I wrote a letter on October 27th.
15   He did not respond.  On October 14th I reached out to him to
16   say:  Are you going to respond to me?  The discovery window is
17   closing.  If not, I need to reach out to the Court.
18             THE COURT:  All right.
19             MR. MCKAY:  That's part of Exhibit B.  That's all laid
20   out anyway.
21             THE COURT:  Well, I want you two to work harder on
22   your communication here.
23             And, Ms. Adams, I know you're not a lawyer.
24             MS. ADAMS:  I am a lawyer, actually, Your Honor.
25             THE COURT:  Oh, you are a lawyer?  Oh, okay.
```

1          MS. ADAMS:  Hard to believe.  I'm not a litigator, and

2     I am very frustrated with the fact that I just, you know --

3          THE COURT:  Well, so maybe that's what I meant to say

4     is you're not a litigator, because I can see sometimes we get

5     off on issues that take us in the -- off what we really want to

6     focus on.

7          MS. ADAMS:  Yes.

8          THE COURT:  So in your conversations with Mr. McKay, I

9     need you to focus so that he's able to understand what you're

10    asking and you're understanding what he's responding, so when

11    we get -- if we get back on the phone, I'll know specifically

12    where the disagreements are.

13         MS. ADAMS:  Right.

14         THE COURT:  You need to narrow those disagreements for

15    me so when we get on the phone, I can address the more specific

16    things.

17         MS. ADAMS:  Your Honor, one of the challenges with

18    that is that when I'm sending Mr. McKay -- part of the reason

19    why there's 29 emails is -- although I don't think that's a

20    lot -- it's single-subject emails.  A witness list.  Contact

21    last known address and telephone numbers.  He's refusing or he

22    doesn't reply, and so I wait a week --

23         THE COURT:  All right, all right.  Here's our new

24    rules.  Anytime one of you sends an email to the other, the

25    other will respond within 72 hours specifically addressing that

1    email and identifying that email as the -- as what you're

2    responding to.  Okay?

3              MR. MCKAY:  Fair enough.

4              MS. ADAMS:  That is helpful.

5              THE COURT:  All right.  Okay.

6              MS. ADAMS:  Your Honor, if I could just go back to the

7    initial disclosures, there are some things that I need.

8              THE COURT:  All right.  What is it?

9              MS. ADAMS:  In defendant's second amended and

10   supplemental initial disclosury protocol, they're saying

11   subsections E, F, K, and L are nonapplicable.  If the answer is

12   no or doesn't exist, I would ask for a clearer answer as it

13   relates to nonapplicable.

14             THE COURT:  Okay.  All right.  I agree.

15             MR. MCKAY:  That's what that means, but I'm happy to

16   put that in there.

17             THE COURT:  Okay.

18             MS. ADAMS:  In subsection F, they allege that the only

19   document related to employment decisions at issue in this

20   lawsuit was the letter stating Ms. Adams' services were no

21   longer needed.

22             MR. MCKAY:  That's not what's stated there.

23             THE COURT:  I don't want to get in the middle of it,

24   but the response to discovery will not be "not applicable."

25   There will either be a response of "Here it is" or "It doesn't

1    exist" or an objection.

2              MR. MCKAY:  Fair enough.

3              THE COURT:  All right?

4              MS. ADAMS:  Yes.

5              THE COURT:  Okay.  Is there anything else -- and with

6    regard to discovery of documents, Rule 34 applies, and that

7    means you need to identify what you haven't disclosed if there

8    are things there and just --

9              MS. ADAMS:  And I do have a question about that, Your

10   Honor.

11             On September 8th, plaintiff's counsel sent me an email

12   saying he had inadvertently disclosed Document AZSEN0591 and

13   that it was privileged, and he demanded that I return it

14   immediately, and I did.  And then I -- but I did ask him about,

15   you know, what was the basis of the privilege.

16             The document was a single document, appeared to be a

17   list of email subjects that -- none of which have been

18   disclosed to defendant, all created prior to the litigation.

19   And so I requested a privilege log.  Defendant's counsel

20   alleges that none is required.

21             On September 14, the following week, there was a

22   Rule 34 certification that no documents had been withheld.  So

23   I would kind of like to know what the status of -- there's no

24   privilege log.  There's no work product log that have been

25   produced to date.

1          MR. MCKAY:  I don't even know exactly what that issue

2     is.  So --

3          THE COURT:  I don't understand that either.  If you

4     have a request for documents or interrogatories, and their

5     answer is, "It's privileged and we have documents that we're

6     not going to turn over," then a privilege log is required.

7          MS. ADAMS:  Okay.

8          MR. MCKAY:  That's not what we have here.

9          THE COURT:  So I don't understand.

10         Anyway, I need you two to work together a little

11    better than what you've been doing and get this discovery done.

12         MR. MCKAY:  Appreciate it.

13         THE COURT:  It's not that complicated.  And,

14    Mr. McKay, just be patient.

15         Ms. Adams, focus.  Help get your thoughts together

16    before you talk.  From my experience here, you have a lot to

17    say, and you want to say it all at one time.  Save it.  Okay?

18    Just get to the point.

19         MR. MCKAY:  Thank you, Your Honor.

20         THE COURT:  All right?

21         MS. ADAMS:  Your Honor, can I ask you about the

22    written discovery deadline of today?

23         THE COURT:  Okay.

24         MS. ADAMS:  The written discovery deadline is today.

25         THE COURT:  Okay.  So what's your question?

1        MS. ADAMS:  Is it possible to extend that deadline?

2        THE COURT:  Okay.  How much time do you want?

3        MR. MCKAY:  I mean, I think it was yesterday, and I

4   think this has gone on longer than necessary.

5        THE COURT:  Ms. Adams, what is -- how much time do you

6   want and why do you want it?

7        MS. ADAMS:  I want it because less than 90 days of

8   discovery has transpired.  Senate has produced no organic

9   documents prior to the scheduling of this telephonic hearing,

10  and I want a meaningful opportunity, Your Honor --

11       MR. MCKAY:  You've got to have good cause for that.

12       MS. ADAMS:  -- to file my --

13       THE COURT:  Hang on.  I don't understand.

14       You're asking to extend the discovery deadline.

15  Usually that's when you have discovery that you want to

16  disclose.  You're asking to extend the discovery deadline for

17  them to disclose it?  Is that what you're saying?

18       MS. ADAMS:  So I can obtain these -- this information,

19  yes, sir.

20       THE COURT:  Well, you've already got the

21  interrogatories and requests out there, don't you?

22       MS. ADAMS:  I do have the requests, yes, sir.

23       THE COURT:  I guess my question:  Are you asking for

24  time so you can send out more requests for production and

25  interrogatories?

1          MS. ADAMS:  Yes, sir.

2          THE COURT:  Well, what --

3          MR. MCKAY:  I think --

4          THE COURT:  Stop, Mr. McKay.  I'm talking to her right

5   now.

6          MR. MCKAY:  Sorry.

7          THE COURT:  Ms. Adams, what is out there that you

8   haven't already asked for?

9          MS. ADAMS:  Well, apparently, their cell phone

10   records.

11          THE COURT:  Did you ask for that?

12          MS. ADAMS:  I asked for it, and Mr. McKay said Senate

13   doesn't control it.

14          THE COURT:  Okay.  Well, then that's your answer.  I

15   mean, if there's third parties that own those records and those

16   cell phones, that's where you need to go.

17          MS. ADAMS:  Okay.

18          THE COURT:  You need to subpoena them.

19          MS. ADAMS:  Okay.

20          THE COURT:  All right?

21          Okay.  So let's -- we're going to work on

22   communication and try to get whatever discovery is left to be

23   done, done and wrapped up quickly and in a way that both

24   parties cooperate.  Okay?

25          MR. MCKAY:  Appreciate your time and assistance, Your

1   Honor.

2         THE COURT:  All right.  Bye-bye.

3         MS. ADAMS:  Last question, Your Honor.  I apologize,

4   but I need to know.

5         THE COURT:  Okay.

6         MS. ADAMS:  The December 1st deadline, is it feasible

7   to have parties remit outstanding discovery so that I can

8   narrow the motion to compel?

9         THE COURT:  I don't understand what you're asking me.

10        MS. ADAMS:  So there's these outstanding things that

11  Mr. McKay is asking for; there's these outstanding things that

12  I've asked for.  Is it feasible to request -- I mean, you just

13  want my motion to compel based on the things we talked about

14  today?

15        THE COURT:  Yeah.

16        MS. ADAMS:  Okay.

17        THE COURT:  One last thing.  I'm going to order the

18  parties to a mandatory settlement conference with a magistrate

19  judge.

20        MS. ADAMS:  I would appreciate that, Your Honor.  And

21  I would ask that pre-filed settlement statements be a

22  requirement of that.

23        MR. MCKAY:  And we would certainly comply.  I would

24  say, based on our discussions to date, I think it would

25  ultimately be futile.

```
1              THE COURT:  I understand that.

2              Okay.  So we'll -- I'm going to appoint a magistrate

3    judge.  I'll give you a deadline to get that done of March 1st.

4    And you'll -- let me make it February 15th.  And then you'll --

5    as soon as you get this order with the name of the magistrate

6    judge, you'll contact the magistrate judge to schedule a

7    settlement conference.  Okay?

8              MR. MCKAY:  Okay.

9              MS. ADAMS:  Thank you, Your Honor.

10             And I think we're on the calendar for December 20.

11   Are we keeping that date, at 9:00 a.m.?

12             THE COURT:  Yeah.  I don't know why we wouldn't.

13             MS. ADAMS:  Okay.

14             (The Court and the courtroom deputy confer.)

15             THE COURT:  Yeah.  That's a scheduling conference

16   where we're going to talk about setting the trial date.

17             MS. ADAMS:  Thank you, Your Honor.

18             THE COURT:  All right.  We'll stand in recess.

19   Bye-bye.

20             MR. MCKAY:  Thank you.  Bye.

21             (Proceedings concluded at 9:42 a.m.)

22

23

24

25
```

1              C E R T I F I C A T E

2

3          I, JENNIFER A. PANCRATZ, do hereby certify that I am

4    duly appointed and qualified to act as Official Court Reporter

5    for the United States District Court for the District of

6    Arizona.

7          I FURTHER CERTIFY that the foregoing pages constitute

8    a full, true, and accurate transcript of all of that portion of

9    the proceedings contained herein, had in the above-entitled

10   cause on the date specified therein, and that said transcript

11   was prepared under my direction and control.

12         DATED at Phoenix, Arizona, this 28th day of November,

13   2017.

14

15

16                         s/Jennifer A. Pancratz

17                         Jennifer A. Pancratz, RMR, CRR, FCRR, CRC

18

19

20

21

22

23

24

25