Talonya Adams
2 North Central Avenue, Suite 1800
Phoenix, Arizona 85004
Telephone: (602) 343-1838
talonya@gmail.com

*Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Talonya Adams<br>　　　　　Plaintiff,<br>vs.<br>Arizona Senate<br>　　　　　Defendant. | Case No: CV-17-00822-PHX-DLR<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Assigned to Honorable Douglas L. Rayes)<br><br>***(Oral Argument Requested)*** |

The Arizona Senate's motion for summary judgment leaves a resounding single question of fact: *Why did the Senate take adverse employment actions against Ms. Adams?* Rather than answer the question, the Arizona Senate fails to even proffer a single non-discriminatory legitimate reason. Shockingly, the Arizona Senate fails to acknowledge that the termination of employment is an adverse employment action. Summary judgment is not appropriate, as outstanding material facts exist.

I.  **SUMMARY JUDGMENT LEGAL STANDARD**

Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of a case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed 2d. 202 (1986); *Villiarimo v. Aloha Island Air, Inc.* 281 F. 3d 1054, 1061 (9th Cir. 2002)

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317 , 323 , 106 S. Ct. 2548, 91 L. Ed. 265 (1986).  The burden then shifts to the non-movant to establish the existence of a genuine and material factual dispute. *Id.* at 324. Throughout the analysis the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. Arizona Senate has failed to establish that no material facts exists, by its own admission the Arizona Senate disputes whether or not Ms. Adams is an employee under GERA, whether or not she suffered any adverse employment action, whether or not attorney Adams' was paid better than, or comparable to attorneys with equivalent education, skill and committees versus non-attorneys without law degrees or

licenses. Embarrassingly, the Arizona Senate offers fails to expressly state or proffer a *reason*, legitimate, nondiscriminatory or otherwise, for the adverse action it denies occurred. Rather, the Arizona Senate states "Senate staff leadership terminated Plaintiff for legitimate, non-discriminatory reasons. SOF ¶¶ 42-43" This claim alone fails.

## II.   LEGAL ANALYSIS

### A. MS. ADAMS' SEX DISCRIMINATION CLAIM SURVIVES

#### i. Ms. Adams' Third Count of Sex Discrimination Is Timely and Within the Scope of Her Initial EEOC Claim and Therefore Must Survive

Plaintiff's unequal pay/disparate treatment based on sex discrimination is neither time-barred, nor outside of the scope of the EEOC Charge. Arizona Senate argues that Plaintiff's sex discrimination claim fails because she failed to timely assert a sex discrimination claim in her Charge of Discrimination that gave rise to this lawsuit. 42 U.S.C. § 2000e-5(f). Discrimination claims are *limited by the charge filed with* the EEOC. *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636-38 (9th Cir. 2002). (Emphasis added) "Incidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge." *Green v. L.A. Cty. Superintendent*, 883 F.2d 1472, 1475-76 (9th Cir. 1989) (citations omitted). In deciding whether the allegations in a civil action are "like or reasonably related" to an administrative charge of discrimination, a court must determine whether the original investigation would have

encompassed the new charges in the civil action. *Id.* (citations omitted). Here, when Plaintiff timely filed her Charge of Discrimination with the EEOC, she ***checked*** the discrimination based on race, ***sex***, and retaliation boxes. See copy of Plaintiff's June 25, 2015 EEOC Intake Questionnaire received by the EEOC on July 23, 2015, bates stamped AZSEN0160 to AZSEN0163 and attached hereto as **Exhibit A**. However, the EEOC investigator inadvertently omitted to check of the sex box due to a clerical error. Subsequently, an EEOC investigation ensued that included and encompassed the sex discrimination and equal pay charges. The Senate was timely served the initial EEOC claim and responded on the merits to claims of race, sex and retaliation. On January 31, 2017, the EEOC amended Ms. Adams' complaint to correct its clerical error and served the Arizona Senate. *See* April 26, 2017 EEOC amended complaint and "clerical error" email correspondence attached hereto as **Exhibit B**. On February 1, 2017, the Senate acknowledged receipt of service of the amended EEOC complaint, without objection or an additional response on the merits. See AZSSEN0301-AZSEN0302, attached hereto as **Exhibit C**.

In May 2017, the Senate filed a *Motion to Dismiss,* citing all Title VII claims, including the alleged time-barred sex discrimination claim. (ECF No. 13 at ¶ 2). Therefore, the Senate's brand new form over substance assertion, that Ms. Adams' sex discrimination claim is time-barred and outside of the scope, fails due to the fact that the sex discrimination claim was timely, the Arizona Senate was served initial (2015) and amended complaints (2017), without objection and furthermore the Senate has responded

on the merits to the sex claim during the EEOC's original investigation, throughout this litigation and in its current motion for summary judgment. Therefore, Plaintiff's Count Three sex discrimination claim has been administratively exhausted, is timely and within the scope of her timely filed EEOC charge and subsequent investigation. Therefore, the sex discrimination claim survives.

**B. DIRECT EVIDENCE SUPPORTS MS. ADAMS' CLAIMS OF SEX AND RACE DISCRIMINATION**

Arizona Senate argues that "not even a scintilla of direct evidence of race or sex discrimination … ." The Arizona State Legislature has blatant discriminatory attitudes toward people of color. CSOF ¶___ *See* Minority Whip Senator Martín Quezada tweet dated April 25, 2018 attached hereto as **Exhibit D**. The Legislature has a sexist culture that tolerates harassment. *See* Minority Leader Senator Katie Hobbs statement to the Arizona Republic attached hereto as **Exhibit E**.

Arguably, the Arizona Senate's own 17-page, size 12 font, Motion for Summary Judgment (Doc. No. 102) speaks to the blatant disregard the Arizona Senate had of Ms. Adams, the only African American policy advisor in either chamber of the Arizona State Legislature, when it denies her comparators of equivalent skill, education and workload, and further denies that employment termination is an adverse employment action—when it occurs to a person of color. Direct evidence supports a hostile, racist and sexist work environment as stated directly from the Arizona Senate leadership that denies Ms. Adams

5

experienced any discrimination or adverse action.

## C. MS. ADAMS HAS ESTABLISHED A PRIMA FACIE CASE OF SEX AND RACE DISCRIMINATION

Establishment of the *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Wallis v. J.R. Simplot Co.,* 26 F. 3d 885, 889 (9th Cir. 1994). The burden of production then shifts to the employer to provide a legitimate and nondiscriminatory/nonretaliatory reason for the adverse employment action. If the employer does so, the burden shifts back to the plaintiff to demonstrate that the employer's proffered reason is a pretext for discrimination or retaliation, "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 , 256 , 101 S. Ct. 1089 , 67 L. Ed. 2d 207 (1981); *see Curley v. City of N. Las Vegas*, 772 F.3d 629 , 632 (9th Cir. 2014).

Both parties agree that to establish a *prima facie* case under Title VII, a plaintiff must offer proof that (i) she belongs to a protected class; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action; and (4) the plaintiff's employer treated the plaintiff differently than a similarly situated employee who does not belong to the same protected class as the plaintiff. *Cornwell v. Electra Cent. Credit*

6

*Union*, 439 F.3d 1018, 1028 (9th Cir. 2006)(emphasis added).

Arizona Senate does not argue that Plaintiff performed her job unsatisfactorily, and it is undisputed that Plaintiff is a member of a protected class. Arizona Senate contends, however, that Plaintiff cannot establish a *prima facie* case of sex or race discrimination under Title VII because she (i) cannot establish that she did not suffer an adverse employment action and (ii) cannot establish that the Senate treated her less favorably than a similarly situated employee not in her protected class.

**i.  Disparate Treatment to Similarly Situated Employees**

1. Denied salary increases
2. Disproportionate Compensation Time
3. Inequitable Vacation Accrual Rate Time
4. Disparate Treatment in Annualized Salary Pay
5. Disparate Treatment in Civic Activities and Obligations
6. Disparate Treatment in Salary Negotiations
7. Disparate Treatment in Committee Selection and Ad Hoc Assignments
8. Termination of Medical and Fringe Benefits
9. Failure to Pay for Week of February 16, 2015
10. Failure to receive Holiday Pay for February 16, 2015
11. Termination of Employment on February 20, 2015

**i.  Adverse Employment Action**

12. *Failure to Promote*

To establish a *prima facie* case of racial discrimination for denial of a promotion, Plaintiff must prove that "(1) [s]he is a member of a protected class; (2) she was qualified for the position, (3) she was not promoted; and (4) either the position was filled by someone not in the protected class, or person was not promoted because of [her] race.

Here, as the Ms. Adams was the only African American female policy advisor in the Arizona State Senate, is a member of a protected class. At the time of the General Counsel interview sessions, she was a licensed attorney and was entering her third legislative session at the Arizona State Senate. Ms. Adams was also the only applicant with legislative experience at the Arizona State Legislature. Ms. Adams was not notified that she was not selected and was not promoted. On or about December 2014, Arizona Senate hired Lisette Flores, a Hispanic individual outside of Ms. Adams protected class.

13. *Termination*

To establish a *prima facie* case of discrimination for a termination, Plaintiff must establish: (1) that she is a member of a protected class; (2) that she was qualified for the position; (3) that she was terminated from the position; and (4) that she was replaced by a person outside of the protected group, or that she was discharged because of her race. Here, during her entire tenure, Ms. Adams was the only African American policy advisor in either chamber of the Arizona State Legislature. CSOF ¶___. It is undisputed that she is a member of a protected class and was qualified for her position. She was terminated from her position on or before February 20, 2015 and three business days later, on February 25, 2015, the Senate contracted with a Caucasian male to replace Ms. Adams for the legislative session at annualized compensation rate of $40,000 more than the

Arizona Senate paid Ms. Adams.  Therefore, Ms. Adams has established a prima facie case of discrimination for her termination(s).

**D. ARIZONA SENATE HAS FAILED TO SHIFT THE BURDEN TO PLAINTIFF**

Arizona Senate then argues that, even if Plaintiff can establish a *prima facie* case of sex or race discrimination, summary judgment is appropriate because the Senate has proffered legitimate, non-discriminatory reasons its adverse actions and that Plaintiff cannot demonstrate that the Senate's reasons for its adverse employment actions were a pretext for unlawful discrimination.  The Arizona Senate has failed to shift the burden back to Plaintiff because it does not demonstrate or even state a reason, legitimate, non-discriminatory or otherwise, for any of the adverse employment actions that it engaged in. In fact, the Senate denies any adverse action occurred. Specifically, Arizona Senate offers no reason for Plaintiff's (1) denied salary increases (2) disparate treatment in allocation of compensation time, (3) disparate treatment in vacation accrual rate increases, (4) disparate treatment in annual salary pay, (5) disparate treatment in civic activity obligations, (6) disparate treatment in salary negotiations, (7) disparate treatment in committee selection and ad hoc assignments, (8) denied promotion to General Counsel, (9) termination of medical benefits and employment on February 13, 2015,  (10) failure to receive salary, or any pay, for the week of February 16, 2015, (11) failure to receive holiday pay—in parity with all her counterparts—for Monday, February 16, 2015 and (12) second/notification of termination of employment on February 20, 2015.

**E. No evidence in record supports Senate's new "loss of confidence" claim and discovery related to Senate's shifting reason for termination is**

**E.  PRETEXT**

Presuming the Senate's "loss of trust in your professionalism" argument is taken at face value, there is not a scintilla of evidence in the record to support the basis of the first or second termination. Assuming "job abandonment" suffices as a legitimate, non-discriminatory reason. The record is clear that Ms. Adams was in Seattle on approved emergency medical leave to tend to her ill son.  In addition, she worked each of the four days she was away. Even if the Senate's stated reason that Ms. Adams' service were no longer needed, as stated on the morning of February 20, 2015, the Senate then hired a Caucasian male to replace her within less than one week and paid him 40% more to do her policy role tasks. If Ms. Adams' continued to raise the "Thunderbird" issue, even after the Thunderbird deadline, the Senate an provide no evidence in support of its articulated reason, other 2018 deposition testimony.  Arizona Senate further alleges that Ms. Adams did not respond to Mr. Winkler's urgent call on the morning of February 16, 2015. What could be so urgent that Mr. Winker would need Ms. Adams to call into the office while traveling to be with a hospitalized son? Further—cell phone records make clear, Mr. Winkler never called Ms. Adams. The brand new argument that Ms. Adams failed to complete substantive work, is simply not verifying by a single Senator or the emails Mr. Winkler sent because they are all regarding newly revised agenda. Lastly, the Senate's response demonstrates that it treated Ms. Adams more harshly than similarly

situated employees. In fact, it doesn't even regard Ms. Adams as being worthy of a law degree holding policy advisor comparator.  Whether the comparison employees are similarly situated to Ms. Adams is an issue of material fact. Whether there is a nondiscriminatory explanation for the Senate's differing treatment of Ms. Adams to her true comparators is a material issues of fact. Here, Defendant's proffered reasons for termination was are pretextual, after the fact confabulation intended to disguise the real reasons.

As a Threshold Matter, Defendant Fails to Meet its Burden of Establishing  (1) plaintiff has viable claims of race discrimination based on disparate treatment (2) plaintiff has viable claims of sex discrimination based on disparate treatment (3) plaintiff has viable claims of retaliation for protected activity in complaining about the discriminatory treatment.  Therefore, genuine issue of material fact exists concerning the legitimacy of the Senate's nondiscriminatory reasons.

**F.  RETAILIATION**

Plaintiff was terminated on February 13, 2015, in retaliation for seeking a salary increase on that same date and for complaining about disparate treatment, sex discrimination, inequitable pay, an imbalanced workload and inequitable treatment and punitive actions taken by her supervisor, the week prior.

When Plaintiff engaged in protected activity and complained that her pay was inequitable compared to her male peers, the Arizona Senate retaliated against her instead of providing redress. Arizona Senate refused to increase Ms. Adams' pay to a level commensurate with her substantial and increasing contributions, instead the Senate terminated her employment and/or medical and fringe benefits on the same date.

Plaintiff was terminated a second time and/or notified of her termination on February 20, 2015 in retaliation for discussing discriminatory actions with Senators, including the staff liaison, inquiring about Family Medical Leave Act options and for taking approved emergency medical leave to engage in familial caretaking obligations to care for her sick son, during the legislative session.

For retaliation claims, a plaintiff must show that she (i) engaged in statutorily protected activity, (ii) suffered an adverse employment action, and (iii) would not have suffered the adverse action but for her protected activity. *Brooks v. City of San Mateo,* 229 F.3d 917 , 928 (9th Cir. 2000); *see Univ. of Texas Sw. Med. Ctr. v. Nassar,* ___ U.S. , 133 S.Ct. 2517 , 2354, 186 L. Ed 2d 503 (2013). The burden of making a prima facie case is not an onerous one; "the requisite degree of proof necessary to establish a prima facie case . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Chuang v. Univ. of Cal. Davis,* 225 F.3d 1115, 1124 (9th Cir. 2000); *see Snead v. Metro . Prop. & Cas. Co.,* 237 F.3d 1080, 1087 (9th Cir. 2001.)

Therefore, Plaintiff respectfully requests that this Court deny Defendant's Motion for Summary Judgment on all counts.

RESPECTFULLY SUBMITTED this 25th day of June, 2018.

/s/ Talonya Adams

Talonya Adams, *Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on June 25th, 2018, I electronically transmitted the foregoing *Plaintiff's Objections to Defendant's Motion for Summary Judgment* to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Mr. John Fry
Mr. N. Todd McKay
Assistant Attorneys General
2005 N. Central Avenue
Phoenix, Arizona 85007

/s/ Talonya Adams

Talonya Adams, *Plaintiff*