**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Talonya Adams, | No. CV-17-00822-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Arizona Senate, | |
| Defendant. | |

Plaintiff Talonya Adams alleges that her employer, Defendant the Arizona Senate, violated Title VII of the Civil Rights Act of 1964 by discriminating against her because of her race and sex, and retaliating against her for engaging in protected activity. Before the Court is Defendant's motion for summary judgment (Doc. 102), which is fully briefed. The Court also heard oral argument on the motion on January 30, 2019. For the following reasons, Defendant's motion is granted in part and denied in part.

**I. Background**

Defendant hired Plaintiff in December 2012 as a policy advisor for the Minority Democratic Caucus ("Minority Caucus") with an initial salary of $60,000. At the time, Plaintiff was a licensed attorney with no prior experience as a state senate policy advisor.

At the start of the January 2015 legislative session, Plaintiff was assigned as the policy advisor for three committees. On February 1, 2015, Plaintiff emailed Jeff Winkler, the Minority Chief of Staff, and then-Senator Katie Hobbs, the Democratic Minority

Leader, about her workload and hourly pay. (Doc. 103-1 at 73.) According to Winkler, Plaintiff was concerned that she was working without compensation because her timesheets reflected only eight hours per day rather than the actual number of hours worked. (*Id.* at 69.) Plaintiff also expressed concern over her workload relative to other policy advisors. In early February, Plaintiff met with Wendy Baldo, Senate Chief of Staff, to discuss these issues.

On February 12, 2015, a newspaper published the salaries of all state senate staffers, including Plaintiff, who still earned a salary of $60,000. The article also reported that Garth Kamp, a Caucasian male who works as a policy advisor with the Arizona Senate Majority Republican Caucus ("Majority Caucus"), earned $84,000 a year. John Fetherston, a Caucasian male who worked as a policy advisor with the Minority Caucus and was hired a month prior to Plaintiff, earned $52,000.

The morning of February 13, 2015, Plaintiff emailed Baldo to inquire about the protocol for requesting a raise. (Doc. 117-1 at 10.) Baldo responded about ten minutes later, informing Plaintiff that she needed to go through her "leadership." (*Id.*) Plaintiff then emailed the minority leadership, which was comprised of six state senators, including Hobbs, requesting a meeting to discuss her "current status" on the Minority Caucus staff. Later that day, Hobbs replied to Plaintiff's email, stating she did not "feel a meeting w[ith] the entire leadership team is appropriate, warranted, or would be productive" given that Plaintiff had already discussed the issue with her, Winkler, and Baldo. Hobbs also instructed Plaintiff to meet with Winkler if she felt that her issues remained unresolved.

Subsequently, Plaintiff informed Winkler that she wanted to discuss a salary increase and notified him that she planned to travel to Seattle to treat her ailing son. (Doc. 103-1 at 85.) Plaintiff stated that she was available to discuss her issues with Winkler the following Monday morning, February 16, 2015. (*Id.*)

Because Plaintiff still was in Seattle on February 16, 2015, she called the office at 6:27 a.m. and left a message that she would be out of the office while attending to her son. (Doc. 117-1 at 40.) Before Winkler and Plaintiff could discuss Plaintiff's concerns about

her pay, Winkler discovered that Plaintiff had failed to complete a substantive briefing project that was due that day. Winkler also learned from Plaintiff's intern that it was Plaintiff's practice not prepare her briefs until after receiving a bill's fact sheet. Winkler felt that this practice violated standard procedures.

When Winkler and Plaintiff eventually spoke that Monday, their conversation focused on Plaintiff's incomplete brief. Specifically, Winkler advised Plaintiff that she had failed to complete her project and had mishandled delegating the project to her intern before leaving for Seattle. Plaintiff assured Winkler that she would work with and assist her intern in completing all projects during her absence. According to Winkler, Plaintiff failed to follow through and he was required to complete Plaintiff's pending projects.

Throughout the week of February 16, 2015, Baldo, Winkler, and Hobbs discussed Plaintiff's conduct. On February 20, 2015, the group decided to terminate Plaintiff because of a lack of trust and confidence. Plaintiff was notified of her termination via telephone later that day.

In March 2017, Plaintiff filed this action, asserting claims against Defendant under Title VII, which prohibits employers from discriminating against employees based on race or sex, and from retaliating against employees for engaging in certain protected activities. *See* 42 U.S.C. §§ 2000e-2(a), 2000e-3. Plaintiff claims that Defendant violated Title VII by paying her less because of her race and sex, and by retaliating against her for seeking a salary increase and making internal inquiries about unequal pay. (Doc. 10.) Defendant seeks summary judgment on all claims. (Doc. 102.)

**II. Legal Standard**

Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The burden then shifts to the non-movant to establish the existence of a genuine and material factual dispute. *Id*. at 324. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," and instead "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation and citation omitted). Conclusory allegations, unsupported by factual material, are insufficient to defeat summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). If the non-movant's opposition fails to cite specifically to evidentiary materials, the court is not required to either search the entire record for evidence establishing a genuine issue of material fact or obtain the missing materials. *See Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028-29 (9th Cir. 2001); *Forsberg v. Pac. N.W. Bell Tel. Co.*, 840 F.2d 1409, 1417-18 (9th Cir. 1988).

**III. Discussion**

    **A. Preliminary Matters**

At the outset, the Court must address Defendant's request that the Court "strike Plaintiff's controverting statement of facts" and deem its statement of facts "as true and undisputed." (Doc. 119 at 7.)

This District's Local Rules of Practice impose specific requirements on the form and content of summary judgment motions. "Any party filing a motion for summary judgment must file a statement, separate from the motion and memorandum of law, setting forth each material fact on which the party relies in support of the motion." LRCiv 56.1(a). Each of these facts "must refer to a specific admissible portion of the record where the fact

finds support (for example, affidavit, deposition, discovery response, etc.)." *Id.* Likewise:

> Any party opposing a motion for summary judgment must file a statement, separate from that party's memorandum of law, setting forth:
>
> (1) for each paragraph of the moving party's separate statement of facts, a correspondingly numbered paragraph indicating whether the party disputes the statement of fact set forth in that paragraph and a reference to the specific admissible portion of the record supporting the party's position if the fact is disputed; and
>
> (2) any additional facts that establish a genuine issue of material fact or otherwise preclude judgment in favor of the moving party. Each additional fact must be set forth in a separately numbered paragraph and must refer to a specific admissible portion of the record where the fact finds support.

LRCiv 56.1(b). The court may deem a movant's separate statement of facts to be true if the non-movant does not comply with these rules. *See Szaley v. Pima Cty.*, 371 Fed. App'x 734, 735 (9th Cir. 2010). Plaintiff's controverting statement of facts fails to comply with the Local Rules and with this Court's prior orders in several ways.

First, there's timing. Defendant filed its motion for summary judgment on April 13, 2018. At Plaintiff's request, the Court extended Plaintiff's deadline to respond to the motion to May 30, 2018. (Doc. 110.) When that day came, Plaintiff filed a controverting statement of facts but no response memorandum of law. (Doc. 111.) The following day, Plaintiff asked the Court again to extend the time for her to file a response memorandum of law, this time through June 4, 2018. (Doc. 112.) On June 21, 2018, the Court issued an order on Plaintiff's motion for an extension of time. (Doc. 115.) In that order, the Court noted that Plaintiff *still* had not filed or lodged a response memorandum of law, even though it was now well beyond June 4, 2018. Nonetheless, the Court extended Plaintiff's deadline to June 25, 2018 (now more than two months after Defendant filed its original motion). On June 25, 2018, Plaintiff filed a response memorandum of law, but also filed an amended separate controverting statement of facts, even though she never sought or received permission to amend her May 30, 2018 separate controverting statement of facts. Moreover, on June 26, 2018—one day after Plaintiff's generously extended response deadline—Plaintiff belatedly filed 153 pages of additional attachments to support her

response. (Doc. 117.)

Plaintiff's amended separate controverting statement of facts was not authorized by the Court. Plaintiff offers no reasonable explanation for filing an amended version of a document she had filed nearly a month earlier, and for which no deadline extensions had been granted. Under these circumstances, the Court has discretion to strike Plaintiff's entire amended controverting statement of facts because no statute, rule, or court order authorized her to file it. *See* LRCiv 7.2(m). The Court will not do so, however, because Plaintiff's amended controverting statement of facts does not appear to deviate significantly from the substance of the original. Instead, the amendments appear to be stylistic, and the amended submission is both easier for the Court to read and somewhat more compliant with the Local Rules (although it in many ways remains out of compliance).

Next, there's length. Paragraph 8(c) of the Scheduling Order states that separate statements of fact "shall not exceed ten pages in length, exclusive of exhibits." (Doc. 60.) Yet Plaintiff's amended controverting statement of facts (not counting the exhibits, caption page, and certificate of service) spans 27 pages.[1] Plaintiff did not move to extend this page limit, nor did the Court grant such relief. The Court will not strike the excess pages, however, because Defendant has not been prejudiced by them. *See Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986) (excusing a pro se litigant's failure to strictly comply with the rules of procedure because the defendant had not been prejudiced by those failures).

Finally, there's substance. Defendant correctly notes that Plaintiff's amended controverting statement of facts often is argumentative, narrative, and conclusory; fails to clearly admit or dispute the facts that Defendant asserted; and sometimes fails to cite to specific admissible portions of the record, all in violation of LRCiv 56.1. This is not a basis for striking the amended controverting statement, however. Instead, consistent with the local rules and the summary judgment standard, the Court will not consider any portion of any party's separate statement of facts that impermissibly contains legal argument,

---

[1] Plaintiff's original controverting statement of facts was even longer. (Doc. 111.)

- 6 -

1 conclusory statements, or disputes over matters immaterial to the motion, or that asserts facts without citing to supporting evidence in the record. *See Hunton v. Am. Zurich Ins. Co.*, No. CV-16-00539-PHX-DLR, 2018 WL 1182552 (D. Ariz. Mar. 7, 2018).

A final note: as explained below, the Court finds that summary judgment is not appropriate for some aspects of Plaintiff's case. This means that, absent a settlement, the parties will proceed to trial. It is imperative that Plaintiff, who is a licensed attorney, take the time to review the Federal Rules of Civil Procedure, this District's Local Rules of Practice, this Court's orders, and the Federal Rules of Evidence, and to make every effort to comply with those rules. Self-representation can be a daunting task. But, as a licensed attorney, Plaintiff should be better positioned that other pro se litigants to comply with the rules governing civil litigation.

**B. Merits**

Defendant makes four arguments for summary judgment: (1) Plaintiff failed to exhaust her administrative remedies for her sex discrimination claim; (2) Plaintiff cannot establish a prima facie case of race or sex discrimination because she did not suffer an adverse employment action and cannot show that she was compensated less than similarly situated employees outside her protected class; (3) Plaintiff cannot establish a prima facie case of retaliation because she cannot demonstrate that she engaged in protected activity, nor is there evidence of a causal connection between Plaintiff's complaints and her termination; and (4) even if Plaintiff can establish a prima facie case of retaliation, Defendant had a legitimate, non-retaliatory reasons for terminating her.

**1. Exhaustion of Sex Discrimination Claim**

Under Title VII, before pursuing a claim in court a plaintiff must timely file a charge with the EEOC, or the appropriate state agency, thereby affording the agency an opportunity to investigate the charge. 42 U.S.C. § 2000e-5(b). "The administrative charge requirement serves the important purposes of giving the charged party notice of the claim and narrowing the issues for prompt adjudication and decision." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (internal quotation and citation omitted). Allegations of

discrimination not included in the plaintiff's administrative charge "may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge." *Green v. L.A. Cty. Superintendent of Schs.*, 883 F.2d 1472, 1475-76 (9th Cir. 1989) (internal quotation and citation omitted).  A district court has jurisdiction over any charges of discrimination that are "within the scope of the EEOC's actual investigation or an EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994) (internal quotation and citation omitted).

Defendant contends that the Court lacks jurisdiction over Plaintiff's sex discrimination claim because she did not include this claim in her EEOC charge.  The facts show otherwise.

Plaintiff filed her EEOC Intake Questionnaire ("Questionnaire") on June 25, 2015, indicating that she believed that she had been discriminated against because of her race and sex.  (Doc. 117 at 2-5.)  Plaintiff also indicated that her employer retaliated against her. (*Id.*)  On July 23, 2015, Plaintiff filed her Charge of Discrimination ("Charge").  The form included checked boxes indicating that Plaintiff believed she had been subjected to "equal pay" and "race" discrimination and subjected to "retaliation."[2]  (Doc. 103-1 at 124.)  The box for "sex" discrimination was not checked.  (*Id.*)  Plaintiff included a factual statement with her Charge, which primarily focused on race-based discrimination.  For instance, Plaintiff stated, "I requested a pay raise as I had just found out that my pay was substantially lower than my non-African American counterparts."  (*Id.* at 125.)  Plaintiff also stated, "I believe my termination was in retaliation for asking for a pay raise to at least match my non-African American counterparts."  (*Id.*)  At other places in the Charge, however, Plaintiff addressed her sex.  (*Id.* at 124.)

Although Plaintiff's Charge left the box for sex discrimination unchecked, her Questionnaire reflected that she also was bringing a sex discrimination claim.  It appears that the unchecked sex discrimination box was a clerical mistake by the EEOC.  Indeed,

---

[2] Plaintiff's operative complaint alleges no claim under the Equal Pay Act.

- 8 -

the Equal Opportunity Investigator stated in an email to Plaintiff that there was a "clerical error" in the form, and that an amended charge of discrimination was filed "check[ing] the box for sex discrimination and add[ing] sex-female language to the last sentence." (Doc. 117 at 7-8.)  When a "charge itself is deficient in recording [a plaintiff's] theory of the case due to the negligence of an agency representative who completes the charge form, [] the plaintiff may present her pre-complaint questionnaire as evidence that her claim for relief was properly exhausted." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1102 (9th Cir. 2002).  Here, Plaintiff's pre-complaint questionnaire includes a sex discrimination theory.

Moreover, even if Plaintiff's Charge did not expressly include a sex discrimination claim, the claim is sufficiently related to the Charge that the Court may properly deem that claim exhausted.  When determining whether a claim is "reasonably related" to an EEOC charge, the charge filed with the EEOC is construed "with utmost liberality since they are made by those unschooled in the technicalities of formal pleading." *B.K.B.*, 276 F.3d at 1100.  "[C]ourts should not use Title VII's administrative procedures as a trap for unwary pro se civil-rights plaintiffs . . . ." *Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1020, 1025 (8th Cir. 2004), *abrogated on other grounds Torgerson v. City of Rochester*, 643 F.3d 1031, 1059 (8th Cir. 2011).  On the other hand, "[a]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." *Id.*

In determining whether a plaintiff has exhausted allegations that she did not specify in her administrative charge, "it is appropriate to consider such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred." *B.K.B.*, 276 F.3d at 1100.  In addition, "the court should consider plaintiff's civil claims to be reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case." *Id.*

Plaintiff's sex and race discrimination claims overlap.  Plaintiff claims that she was

- 9 -

paid less because she is a black woman. These two theories involve the same adverse act allegedly taken within the same time frame by the same actors in the same location. Therefore, Plaintiff exhausted her sex discrimination claim both because its technical omission from the original charge was due to an agency clerical error, and because the claim is sufficiently related to the allegations contained in the original EEOC charge.[3]

## 2. Prima Facie Case of Sex and Race Discrimination

Title VII discrimination claims are governed by the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this framework, the plaintiff bears the initial burden of demonstrating a prima facie case of discrimination or retaliation. If a plaintiff makes this threshold showing, "[t]he burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1123-24 (9th Cir. 2000). If the employer does so, the burden shifts back to the plaintiff to demonstrate that the employer's proffered reason is a pretext for discrimination, "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

To establish a prima facie case of discrimination, a plaintiff must show that she: (1) is a member of a protected class, (2) is qualified for her job, (3) suffered an adverse employment action, and (4) was treated less favorably than other similarly situated employees outside her protected class. *McDonnell Douglas*, 411 U.S. at 802. "The

---

[3] In her response brief, Plaintiff contends that Defendant's decision not to hire her as General Counsel in late 2014 is also an adverse employment action. In reply, Defendant argues that "failure to promote" is not part of Plaintiff's discrimination claim in this matter because she failed to exhaust her administrative remedies with respect to that theory. (Doc. 119 at 8-9.) On this point, the Court agrees with Defendant. Although Plaintiff raised the issue in her Questionnaire, stating that she was "[d]enied a fair evaluation for [General Counsel] role," unlike with Plaintiff's sex discrimination claim, there is no evidence that omission of this theory from Plaintiff's Charge or Amended Charge was a result of the agency's negligence. Moreover, the Court finds that Defendant's alleged decision not to hire Plaintiff as General Counsel is not reasonably related to allegations that she discriminated against in terms of pay.

requisite degree of proof necessary to establish a prima facie case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Chuang*, 225 F.3d at 1124.

There is no dispute that Plaintiff is a member of a protected class and qualified for her job, but Defendant argues that Plaintiff has no evidence she suffered an adverse employment action or that she was treated less favorably than similarly situated employees outside her protected class. Defendant takes this position largely because it considers Plaintiff's appropriate comparators to be other Minority Caucus policy advisors. Defendant correctly notes that Plaintiff "was at all times paid better than, or comparably to, similarly situated [Minority] Caucus policy advisors." (Doc. 102 at 10.)

Missing from Defendant's argument, however, is an evidence-based explanation for why Plaintiff should be compared only to other policy advisors within the Minority Caucus. "[I]ndividuals are similarly situated when they have similar jobs and display similar conduct." *Vasquez v. Cty. of L.A.*, 349 F.3d 634, 641 (9th Cir. 2003).  The employees need not be identical; they simply must be similar "in all material respects." *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006).  At oral argument counsel for the Defendant, given repeated opportunities to do so, could not point to any evidence in the record that a Majority Caucus policy advisor position materially differs from a Minority Caucus policy advisor position.

This omission matters because Plaintiff identifies two Caucasian male policy advisors for the Majority Caucus, Garth Kamp and Rodney Ross, who received higher pay than she did.[4]  (Docs. 116-1 ¶ 53; 117 ¶¶ 17-18.) Ross and Kamp had similar committee assignments as Plaintiff.  (Doc. 117 at 32 ¶¶ 17-18.)  Moreover, despite representations by Defendant's counsel at oral argument, the record indicates that Plaintiff, like Kamp and Ross, reported to Baldo.  (Doc. 117 at 23 ¶ 1.)

There being no evidence in the record that policy advisors for the Majority and

---

[4] Plaintiff also compares herself to two other employees, Jeffrey Kros and Mark Bogart. (Doc. 116-1 ¶ 53.)  But Kros was Associate General Counsel and Bogart was an independent contractor, not an employee. (Doc. 117-1 at 63-66, 71.) Kros and Bogart are not appropriate comparators.

- 11 -

Minority Caucuses performed materially different functions, the Court finds that Plaintiff has met her relatively low burden to establish a prima facie case of sex and race discrimination based on these wage disparities.

The burden therefore shifts to Defendant to articulate a legitimate, nondiscriminatory reason for paying Plaintiff less than Kamp and Ross. Defendant has not done so. Instead, Defendant doubles down on its prior argument: "[A]gain, there was no adverse employment action . . . as Plaintiff was at all times paid better than, or comparably to, other similarly situated Democratic Caucus policy advisors despite the fact that she was at all times the least experienced of all such policy advisors." (Doc. 102 at 10.) Defendant therefore has not shown that it is entitled to summary judgment on these claims.[5]

### 3. Prima Face Case of Retaliation

Retaliation claims also are governed by the *McDonell Douglas* burden-shifting framework. To establish a prima facie case of unlawful retaliation, a plaintiff must show that (1) she engaged in protected activity; (2) she thereafter was subjected by her employer to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *See Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 894 (9th Cir. 2005). Defendant contends that Plaintiff cannot establish the first or the third elements.

#### i. Protected Activity

A protected activity must relate either to an employee's opposition to a practice made unlawful by Title VII, or the employee's participation in an investigation, proceeding, or hearing under one of those acts. 42 U.S.C. § 2000e-3(a). Plaintiff asserts that she engaged in protected activity when she: (1) complained about "inequitable pay"

---

[5] Included under the umbrella of unequal pay, Plaintiff raises over a dozen allegations of adverse employment actions related to fringe benefits (Doc. 116 at 7-8) but offers evidence that she was treated less favorably than similarly situated employees outside her protected class with respect only to two: "compensation time" and "accrual rate time." (Doc. 117-1 at 58-59, 64-65.) As a result, Plaintiff has not made her prima facie case with respect to any of these other adverse action theories.

and requested a raise, and (2) inquired about "Family Medical Leave Act" options. (Doc. 116 at 12.)

"As a matter of law, asking for a pay raise is not protected activity" unless the request also communicates concerns about unlawful discrimination. *See Coleman v. Home Health Res. Inc.*, 269 F. Supp. 3d 935, 943 (D. Ariz. 2017) ("Without communicating that she believed this to be unlawful discrimination, [the plaintiff] did not engage in conduct protected under Title VII" when she requested a rise.). Plaintiff contends that her request for a raise is a protected activity because it included complaints about disparate treatment and sex discrimination. (Doc. 116 at 11.) In support, Plaintiff offers her declaration, which states in relevant part: "On Friday, February 13, 2015, I communicated with several Senators, staffers [], and others . . . regarding the pay disparity . . . [and] discriminatory treatment that seemed to be happening to [her,] the only African American policy advisor." (Doc. 117 at 34-35 ¶ 44.)

Defendant contends that Plaintiff's declaration is "sham affidavit" because of conflicts between Plaintiff's declaration and her interrogatory responses and deposition testimony. (Doc. 119 at 11.) Defendant's argument is vague and unpersuasive. The interrogatory responses and deposition testimony provided by Defendant do not conflict with Plaintiff's declaration. The Court, therefore, declines to strike Plaintiff's declaration as a "sham affidavit." Moreover, Plaintiff's declaration sufficiently connects her salary complaints with allegations of race and sex discrimination such that they may be considered protected activity under Title VII.

Unless connected to concerns about unlawful discrimination, inquiring about family medical leave likewise is not protected activity. Unlike her requests for a salary increase, Plaintiff offers no evidence that her inquiries about leave were accompanied by concerns that leave was being administered in a discriminatory manner. As such, the Court finds that these inquiries are not protected activity for purposes of Title VII.

### ii. Causation

Defendant contends that "Plaintiff cannot establish the third prong . . . because . . . there is absolutely no evidence of any causal connection to her termination since the [] individuals who made the decision to terminate Plaintiff's employment had no knowledge whatsoever of any complaints regarding race or sex discrimination by Plaintiff." (Doc. 102 at 15.) In support, Defendant relies on declarations from Baldo, Hobbs, and Winkler, stating that Plaintiff never expressed to these individuals a belief that she was being discriminated against with respect to her pay, workload, or other terms of employment because of her race or sex, nor were they aware of any such complaints. (Doc. 103-1 at 5 ¶ 27, 69 ¶ 3, and 122 ¶ 4.) Plaintiff, however, states in her declaration that she discussed these issues with her supervisors on February 13, 2015, creating a genuine issue of fact on this point. (Doc. 117 at 34-35 ¶ 44.) Moreover, Plaintiff was fired a mere seven days after raising her concerns, and this short duration can be circumstantial evidence of causation. The Court therefore finds that Plaintiff has made her prima facie case with respect to her complaints about pay discrepancies. The burden shifts to Defendant to articulate a legitimate, non-retaliatory reason for terminating Plaintiff.

### 4. Defendant's Proffered Reason for Terminating Plaintiff

Defendant contends that Plaintiff was fired because "Senate staff leadership . . . lost trust and confidence in her." (Doc. 103 ¶ 42.) For instance, Defendant no longer trusted that Plaintiff was properly completing her briefing assignments. (Doc. 103-1, Katie Hobbs Deposition at 132:15-133:12.) Defendant has satisfied its burden of articulating a legitimate, nonretaliatory reason for Plaintiff's termination. *See Nelson v. Bank of Am., Inc.*, No. 302-CV-687-L, 2004 WL 942238, at *12 (N.D. Tex. Apr. 30, 2004) ("Loss of trust and confidence by the management of a company is a legitimate, nondiscriminatory reason for termination.").

The burden therefore shifts back to Plaintiff to demonstrate that Defendant's proffered reason is a pretext for retaliation, "either directly by persuading the court that a [retaliatory] reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256.

Pretext means more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action." *Wolf v. Buss (America) Inc.*, 77 F.3d 914, 919 (7th Cir. 1996) (internal quotation and citation omitted). A plaintiff "cannot simply show that the employer's decision was wrong, mistaken, or unwise." *Dep't of Fair Emp't & Housing v. Lucent Techs., Inc.*, 642 F.3d 728, 746 (9th Cir. 2011) (internal quotation and citation omitted). Instead, she must show "such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Id.* A plaintiff's evidence on this point "must be both specific and substantial to overcome the legitimate reasons put forth by," the employer. *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 659 (9th Cir. 2002).

Plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether Defendant's articulated reason was merely pretext for retaliation. For instance, Plaintiff offers evidence that she had never received any "written complaints or other documents criticizing [her] work performance," and had "frequently received praise regarding [her] job performance." (Doc. 117 at 37 ¶¶ 71-73.) Plaintiff also offered evidence that she completed the substantive work before leaving town on February 16, and "worked remotely" during her absence, having daily contact with "Mr. Winkler, [her] intern, and some of [her] members." (*Id.* at 36 ¶¶ 57, 60.) Collectively, this evidence calls into question whether Defendant's articulated reason for terminating Plaintiff is pretextual. Accordingly, Defendant is not entitled to summary judgment on this claim.

**IT IS ORDERED** that Defendant's motion for summary judgment (Doc. 102) is **GRANTED in part** and **DENIED in part** as follows:

1. Defendant's motion is **DENIED** with respect to Plaintiff's claim that she was discriminated against in terms of pay, compensation time, and accrual rate because of her race and sex.
2. Defendant's motion is **GRANTED** with respect to Plaintiff's other theories of discrimination.

3. Defendant's motion is **DENIED** with respect to Plaintiff's claim that she was terminated in retaliation for complaining about perceived discrimination in pay.

4. Defendant's motion is **GRANTED** with respect to Plaintiff's other theories of retaliation.

**IT IS FURTHER ORDERED** that the parties shall appear telephonically on **February 14, 2019 at 9:30 a.m.** in Courtroom 606, 401 West Washington Street, Phoenix, AZ 85003 before Judge Douglas L. Rayes to discuss setting a trial date and other pre-trial deadlines.

Dated this 5th day of February, 2019.

Douglas L. Rayes
United States District Judge