**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Talonya Adams,<br><br>Plaintiff,<br><br>v.<br><br>Arizona Senate,<br><br>Defendant. | No. CV-17-00822-PHX-DLR<br><br>**ORDER** |

Before the Court is Defendant Arizona Senate's ("the Senate") Motion to Conform Verdict to Statutory Cap and Alternative Motion for Remittitur or New Trial on the Issue of Damages (Docs. 186, 199, 208), Motion to Preclude Award of Back or Front Pay for the Period After Plaintiff Stopped Drawing Employment Benefits (Docs. 207, 215, 218), and Motion to Preclude Award of Special Damages (Docs. 209, 215, 218), which are fully briefed. The Senate's motions are granted in part and denied in part, as described below.

**I. Background**

Plaintiff Talonya Adams brought this action against the Senate under Title VII, asserting claims of race and sex discrimination and unlawful retaliation. (Doc. 10.) At trial, Ms. Adams prevailed and the jury returned a verdict awarding her $1,000,000 in compensatory damages. (Doc. 177.) Subsequently, the Senate filed its Motion to Conform Verdict to Statutory Cap and Alternative Motion for Remittitur or New Trial on the Issue of Damages. (Doc. 186.) The Court held an evidentiary hearing on August 14, 2019.

(Doc. 214.) At the hearing, the Court requested that the parties submit supplemental briefing regarding back pay, front pay, and special damages. (*Id.* at 96.) All three motions are now ripe.

**II. Analysis**

To begin, the Court must determine which statutory cap is appropriate. 42 U.S.C. § 1981a(b)(3) provides that, in cases of intentional discrimination in employment,

> The sum of the amount of compensatory damages awarded . . . for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses . . . shall not exceed, for each complaining party. . . .
>
> (B) in the case of a respondent who has more than 100 and fewer than 201 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $100,000; and
> . . . .
>
> (D) in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000.

Following the rationale applied in *Diaz v. Okla. Bureau of Narcotics*, 224 F. Supp. 3d 1215 (W.D. Okla. 2016), the Court concludes that Section 1981a(b)(3)(D)'s $300,000 statutory cap applies. In *Diaz*, the named respondent was a state agency—the Oklahoma Bureau of Narcotics and Dangerous Drugs Control ("OBN"). Nonetheless, the court determined that the State of Oklahoma—unnamed in the complaint—was the relevant entity for determining whether a $100,000 or a $300,000 cap applied to the jury's award of compensatory damages because the plaintiff, an employee of OBN, was also a state employee.[1] *Id.* at 1219-20. Here, it is undisputed that Ms. Adams was at all relevant times a state employee. (Doc. 214 at 23.)

As a result, it is appropriate to look to the State of Arizona as the relevant entity to

---

[1] The Senate asserts that the Western District of Oklahoma's decision is distinguishable because the court only found Section 1981a(b)(3)(D) applicable because the parties stipulated to a $300,000 cap in a final pre-trial report. (Doc. 208 at 4.) However, the *Diaz* court explicitly engaged in an analysis separate from these stipulations, noting "the result would be the same with or without consideration of defendant's statement in the Final Pre-Trial Report." *Diaz*, 224 F. Supp. 3d at 1219.

determine whether a $100,000 or a $300,000 cap applies.² It is undisputed that the State of Arizona employs more than 500 employees. Accordingly, the compensatory damage verdict award at trial shall be capped at $300,000.³

Next, the Court must resolve to what extent Ms. Adams is entitled to recover special damages, back pay, and front pay. The Court ordered Ms. Adams to "provide [a copy of] all damage *evidence* and calculations" to the Court on June 17, 2019. (Doc. 159) (emphasis added). Ms. Adams provided a skeletal list *calculating* the damages that she seeks to recover. (Doc. 215 at 10-15). But this list generally lacks accessible[4] evidentiary support indicating to the Court that the amounts sought are reasonable, recoverable, and founded in law and fact.

Ms. Adams has the burden of establishing her damages and indicating that such amounts are appropriate, but she has not shown that her special damages,[5] attorneys' fees, ASRS retirement 6% match, or gross up are even recoverable in these circumstances under the law, let alone demonstrated that the amounts she seeks are appropriate. As a result, the Court will grant the Senate's Motion to Preclude Award of Special Damages (Doc. 209) and deny Ms. Adam's request for attorneys' fees, ASRS retirement 6% match and gross up. *See In re Wiggins*, 273 B.R. 839, 880 (B.R. D. Idaho 2001) (citations omitted) ("Plaintiffs did not . . . submit specific proof in support of the amount of . . . the

---

[2] The Court is unpersuaded by the Senate's reliance on *Tart v. Elementis Pigments*, 191 F. Supp. 2d 1019, 1023 (S. D. Ill. 2001), *Baier v. Rohr-Mont-Motors, Inc.*, 175 F. Supp. 3d 10000 (N.D. 2016), *Parrish v. Sollecito*, 280 F. Supp. 2d 145, 155 (S.D.N.Y. 2003), and *Mugavero v. Arms Acres*, 680 F. Supp. 2d 544, 586 (S.D.N.Y. 2010), to suggest that a result contrary to *Diaz* is appropriate. None of these cases involve plaintiffs employed by a state agency or the state.

[3] The Senate also requests that, regardless of the statutory cap deemed proper, the Court remit Ms. Adam's award to no greater than $100,000 or set a new trial. (Doc. 186 at 6.) In support, the Senate argues that a $300,000 award is excessive and that the size of the jury's award was fueled by Ms. Adams' closing argument, which inappropriately directed the jury to punish the Senate. The Court does not find a $300,000 award to be excessive, nor will it second guess the jury verdict. Notably, the Senate failed to contemporaneously object to Ms. Adams' closing argument.

[4] Ms. Adams frequently refers to documents throughout the list that she allegedly relied upon in making her damage calculations. However, she has not provided these documents in their entirety to the Court, and the Court may not simply take her at her word that undisclosed documents support her requests.

[5] Special damages sought include student loan forgiveness, recovery of her early retirement withdrawal penalty, the costs of the Thunderbird seminar trip to Asia and makeup trip, bar association dues, and medical benefits. (Doc. 215 at 11-12.)

compensatory damages they seek to recover. This is clearly their burden, and absent competent proof, the Court will not speculate[.]"); *Tourgeman v. Nelson & Kennard*, 900 F.3d 1105, 1109 (9th Cir. 2018) (holding that the plaintiff bears the burden of proving damages); *Gotthardt v. Nat'l R.R. Passenger Corp.*, 191 F.3d 1148, 1158 (9th Cir. 1999) (same).

Now, the Court turns to back pay. First, it is not in dispute that Ms. Adams is entitled to pre-termination back pay. (Doc. 214 at 27.) However, the parties disagree about the amount to which Ms. Adams is entitled. Notably, back pay liability "shall not accrue from a date more than two years prior to the filing of a charge with the [Equal Employment Opportunity] Commission." 42 U.S.C. 2000e-5(g)(1). Ms. Adams filed her EEOC charge on July 23, 2015. (Doc. 103-1 at 124.) Therefore, Ms. Adams may recover for the period between July 24, 2013 through February 13, 2015, an approximately 18-month span, rather than for the 25-months that Ms. Adams requests. As a result, the Court awards Ms. Adams 18/25 of the $53,740.94 she sought, equaling $38,693.48.

Second, the Court addresses post-termination back pay. On June 21, 2019, the Court ordered that Ms. Adams could not present evidence on damages regarding past lost wages for the period after she "stopped drawing unemployment benefits" due to her failure to produce mitigating evidence in discovery.[6] (Doc. 162.) The evidentiary record reflects that Ms. Adams stopped drawing unemployment benefits on April 11, 2015.[7] Therefore,

---

[6] Ms. Adams had every opportunity to produce the required mitigating evidence. Throughout discovery, the Senate issued various damages-related discovery requests to Ms. Adams. (Doc. 132-1 at 3-16.) Despite extensive back-and-forth, Ms. Adams failed to produce any responsive information. After the Senate expressed its concerns during a November 22, 2017 hearing, the Court explained to Ms. Adams that the law required her to support her damages claims with evidence in order to recover. (*Id.* at 19-20.) At the hearing, Ms. Adams expressed that she understood what she was required to produce. (*Id.* at 20.) Thereafter, the Court ordered Ms. Adams to respond to the Senate's discovery requests. (Doc. 46.) However, despite the passage of over a year, Ms. Adams did not comply. In fact, she failed to provide any evidence of her tax returns, interim earnings, or other basic damages-related information. Nevertheless, the Court gave Ms. Adams one final chance to meet her burden. On June 17, 2019, the Court ordered Ms. Adams to provide all damage evidence and calculations related to damage evidence to the Senate and to the Court no later than June 20, 2019. (Doc. 159). Plaintiff did not do so. Consequently, the Court granted in part the Senate's motion in limine (Doc. 132), precluding Ms. Adams from introducing any damage evidence, regarding her past lost wages, following the date in which she stopped drawing unemployment benefits. (Doc. 162.)

[7] Ms. Adams testified that she drew additional benefits until November 2015 but

she may only recover post-termination damages from February 13 until April 11, 2015, or the span of approximately two months. At the time of her termination, Ms. Adams' annual salary was $60,000. (Doc. 214 at 6.) She is entitled to recover two months of that annual salary, equaling $10,000.

Third, as the Court explained during the evidentiary hearing (Doc. 214 at 36-39), its rationale for foreclosing past lost wage recovery following April 11, 2015, equally applies to all other back pay because Ms. Adams failed to produce mitigating evidence across the board, generating concerns identical to those spurring the June 21, 2019 order. *See Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1020 (9th Cir. 2000) (noting that the Ninth Circuit imposes a duty on plaintiffs seeking any form of back pay to mitigate damages). Thus, Ms. Adams may recover for those past lost benefits that accrued up to April 11, 2015. The Court concludes that Ms. Adams has proven entitlement to recover for 42.7 hours[8] compensation pay equaling $2,220.40, 52 vacation hours equaling $2,704.00, and 52 sick leave hours credit.[9]

Next, the Court will order that Ms. Adams be reinstated as a policy advisor. *See* 42 U.S.C. 200e-5(g)(1) (listing reinstatement as an appropriate form of equitable relief); *Caudle*, 224 F.3d at 1020 (citation omitted) ("[R]einstatement, when it is feasible, is the 'preferred remedy' in a discrimination suit."). Ms. Adams has requested reinstatement, which the Senate has confirmed is feasible. (Doc. 214 at 33, 65). The Court, in its discretion, will therefore order the parties to reach an agreement regarding the terms and conditions of the position to which Ms. Adams will be reinstated. *Poindexter v. Kan. City, Mo. Water Dept.*, 573 F. Supp. 647, 660-61 (W.D. Mo. 1983). Ms. Adams requested that she be granted front pay, in lieu of reinstatement. Because the Court has granted reinstatement, the request for front pay is moot. *Kent by Gillespie v. Derwinski*, 790 F.

---

has failed to produce any corroborating documentary evidence.

[8] The Court arrives at this figure by adding the 16 compensation hours to which Ms. Adams was entitled in 2013 (Doc. 215 at 14) to the approximately four months' worth (January through April) of compensation pay to which she was entitled in 2015 (equaling 1/3 of the annual 80 hours of compensation pay, or 26.7 hours).

[9] The Court arrives at the 48.92-hour figure for both vacation and sick leave by adding the 11.96 hours in 2014 to which Ms. Adams was entitled to the four months' worth of hours to which she was entitled in 2015.

Supp. 1032, 1041 (E. D. Wash. 1991).

Finally, Ms. Adams shall be granted pre-judgment interest at a rate of 1.66% and post-judgment interest.[10] *Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 291 (9th Cir. 1995) (citing *Perkins v. Standard Oil Co.*, 487 F.2d 672, 674 (9th Cir. 1973)). The post-judgment interest shall accrue until the parties have negotiated a reinstatement agreement, Ms. Adams is reinstated, and any other issues in this matter are resolved; otherwise, the Senate may have a perverse incentive to "exploit the time value of money by . . . delaying[.]" *Id.* at 290. *See also Kaiser Aluminum & Chem Corp. v. Bonjorno*, 494 U.S. 827, 834 (1990) ("the policy underlying the postjudgment interest statute [is] compensation of the plaintiff for the loss of the use of the money"). Accordingly,

**IT IS ORDERED** that

1. The Senate's statutory cap motion (Doc. 186) is **GRANTED** insofar as the jury's compensatory damages award is capped at $300,000 pursuant to 42 U.S.C. § 1981a(b)(3)(D). The Senate's motion is otherwise **DENIED**.
2. The Senate's Motion to Preclude Award of Back or Front Pay for the Period After Plaintiff Stopped Drawing Employment Benefits (Doc. 207) is **GRANTED.**
3. The Senate's Motion to Preclude Award of Special Damages (Doc. 209) is **GRANTED**.
4. Ms. Adams is awarded damages in the amount of **$353, 617.88**.[11]
5. Ms. Adams is awarded pre-judgment and post-judgment interest.
6. The Senate shall reinstate Ms. Adams, pursuant to terms negotiated by the parties, no later than **October 31, 2019**.

//

---

[10] *See* 28 U.S.C. § 1961(a) ("Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.")

[11] This amount includes the capped jury award and all other damages sought by Ms. Adams, excluding pre-judgment and post-judgment interest.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to enter judgment accordingly and terminate this action.

Dated this 16th day of October, 2019.

_____
Douglas L. Rayes
United States District Judge