**TALONYA ADAMS**
Two North Central Avenue, Suite 1900
Phoenix, Arizona 85004
Telephone 602.343.1838

Talonya Adams #031276
ta@1700westlaw.com

*Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Talonya Adams,<br><br>                    Plaintiff,<br><br>v.<br><br>Arizona Senate,<br><br>                    Defendant. | No. CV-17-00822-PHX-DLR<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT ARIZONA SENATE'S MOTION TO FOR A NEW TRIAL** |

Plaintiff Talonya Adams hereby responds in opposition to the Arizona State Senate's third motion for a new trial and respectfully requests that the Court deny the motion for the following reasons:

## I. DEFENDANT'S MOTION FOR A NEW TRIAL PURSUANT TO RULE 59

Arizona Senate seeks a new trial pursuant to Fed. R. Civ. P. 59 ("Rule 59"). The Senate's motion is based upon a single ground that the jury verdict is contrary to the weight of the evidence in regards to Question Number 7 of the jury verdict form drafted by the Arizona State Senate. (Doc. 177 and Doc. 174)

### *Procedural History*

On April 13, 2018, Defendant Arizona Senate, moved for summary judgment on all Ms. Adams race, sex and retaliation claims against the Arizona State Senate. (Doc. 102) On

January 31, 2019, the Court heard oral argument, at which time the Senate's primary argument was that Ms. Adams could not make a prima facia case on her retaliation claim because she had suffered no adverse employment action by the Arizona State Senate. (Doc. 120) Ms. Adams retaliation claim survived. (Doc. 123).

On July 11, 2019, upon the close of Ms. Adams case in chief, the Senate moved for a judgment as a matter of law pursuant to Rule 50(a). (Doc. 175) Mr. Moberly asserted that there was no legally sufficient basis for a reasonable jury to find for Ms. Adams on the issue of race or sex discrimination. *Id.* Defendant Arizona Senate's oral motion excluded Ms. Adams retaliation claim.  The motion was denied. *Id.*

On July 15, 2019, the jury followed the standards set forth in its instructions and unanimously ruled in Ms. Adams favor on each and every claim. *See* Exhibit A, Redacted $1 Million Dollar Verdict Form.

On July 31, 2019, the Arizona Senate filed a motion to set aside the jury verdict and in the alternative requested a remitter or new trial. This time, the Senate challenged the jury's damage verdict. On October 17, 2019, the Court reduced Ms. Adams $1 million dollar verdict to $300,000 in response to the Senate's motion. Additionally, the Court ordered that Ms. Adams be reinstated to her policy advisor role by October 31, 2019. (Doc. 220).

On November 13, 2019, the Arizona State Senate filed another repetitive motion to assign this court to overturn the jury verdict and grant a new trial under Rule 59(a) on Plaintiff's retaliation claim. (Doc. 234)

## II. STANDARD OF REVIEW

Rule 59(a) provides that "a new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States.

Under Rule 59(a) of the Federal Rules of Civil Procedure, the court may grant a new trial "after a jury trial, for any reason for which a new trial has heretofore been granted . . ." Fed. R. Civ. P. 59(a)(1)(A). The trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *See Passantino v. Johnson & Johnson* Consumer Prods., 212 F.3d 493(9th Cir. 2000); *see also Union Oil Co. v. Terrible Herbst, Inc.*, 331 F.3d 735, 742 (9th Cir. 2003).

## III. THE ROLE OF THE COURT AND THE FACT FINDING JURY

On July 12, 2019, at the close of the evidence, the jury was given multiple instructions regarding its duty in consideration of the evidence. (Doc. 183) On July 12, 2019, the jury

was instructed to the preponderance of the evidence standard, which included the following statement:

> Burden of Proof—Preponderance of the Evidence.
> When a party has the burden of proving any claim by a preponderance of the evidence , it means you must bear persuaded by the evidence the the claim is more probably true than not true. You should based your decision on all of the evidence regardless of which party presented it.

The Court also instructed the jury, as to the various types of evidence presented (sworn testimony of the witnesses, exhibits that are admitted into evidence; any facts to which the lawyers have agreed and any facts the court instructed the jury to accept as true). Likewise, the jury was charged with being the sole judge of the credibility of the witnesses, the quality and persuasiveness of the evidence, and the weight any testimony or exhibits deserved. The jury may be guided by the memory and conduct of the witness, the manner in which the witness testifies, the witnesses's interest in the outcome of the case, bias or prejudice, evidence contrary to a witness's testimony or any other factors that bear on believability. (Doc. 183 at 3:1-9)

Lastly, the jury was instructed

> [i] f you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept part of what you think is true and ignore the rest. (Doc. 183 pages 7-8)

While the court may weigh the evidence and assess the credibility of witnesses, it may not grant a new trial "merely because it might have come to a different result from that reached

by a jury." *Roy v. Volkswagen of America, Inc.*, 896 F.2d 1174, 1176 (9th Cir. 1990) (citation omitted). It is not the courts' place to substitute our evaluations for those of the jurors. *Union Oil Co.*, 331 F.3d at 743.

"[A] decent respect for the collective wisdom of the jury, and for the function entrusted to it in our system, certainly suggests that in most cases the judge should accept the findings of the jury, regardless of his own doubts in the matter." *Landes Const. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987) (citations omitted). Here, the Arizona Senate doe into allege a miscarriage of justice, no

## IV. THE JURY VERDICT IS NOT CONTRARY TO THE CLEAR WEIGHT OF THE EVIDENCE

Defendant Arizona Senate contends that the $1 million dollar, unanimous jury verdict is contrary to the clear weight of the evidence because Ms. Adams "failed to establish the the engaged in the type of statutorily protected activity necessary for her to prevail on her retaliatory discharge claim" by a preponderance of the evidence.

During trial Ms. Adams presented witnesses including herself, Katie Hobbs, Jeff Winkler, Wendy Baldo, Sandy Reilly, Lupe Contreras, Catherine Miranda, Steven Farley, Barbara McGuire, Olivia Cajero Bedford and David Bradley. Plaintiff also presented a variety of exhibits. Similarly, Defendant Arizona Senate called several witnesses and presented many exhibits. Ms. Adams' witnesses and exhibits supported the proposition that Plaintiff had

been the subject of abrupt, retaliatory adverse actions due to her prior protected activity—complaints that every Caucasian male received a raise in 2014 when all female Democratic staffers did not, including Ms. Adams—who the Senate never gave a raise.

Defendant Arizona State Senate's witnesses Katie Hobbs, Sandy Reilly and Wendy Baldo and exhibits tended to support the same: that Plaintiff, the only African American received adverse employment actions and at times other women had been subject to adverse actions, and that any actions to which she and her female co-workers were subjected to did result from her prior protected activity.  Further Arizona State Senate Chief of Staff Wendy Baldo has since testified to retaliation and discriminatory acts, at post trial evidentiary hearings.

In its defense the Arizona Senate alleged no legitimate, non-discriminatory reasons for imposing the adverse actions were the true reasons for Arizona Senate's unlawful termination of Ms. Adams.

Rightly so, the jury found that Ms. Adams had proven, by a preponderance of the evidence, that she complained that she was being discriminated against on the basis of race *or* sex with respect to her pay and was terminated for that reason. *See* Exhibit A, Redacted Verdict Form Question 7.

The Senate's fact intensive Rule 59 motion, now asks this Court, to speculate as to why the jury reached its decision. However, the Senate has offered this Court no reason as to why it should believe that the jury's determination was based anything other than its having been more persuaded, or equally persuaded, by Ms. Adams' proof, preventing it from reaching the "more likely than not" level required by the preponderance of the evidence standard.

The Court's role is not to substitute its view of the evidence for that of the jury. *Winarto v. Toshiba Am. Elecs. Components*, 274 F.3d 1276, 1283 (9th Cir. 2001). When two possible sets of inferences are supported by the record, "the inferences that support the jury's verdict of course win the day." Id. at 1287. Here, the Senate's presumption of the how and why eight Jurys came to a determination that the Arizona Senate discriminated against Ms. Adams is speculative at best. The Arizona Senate, nor its greedy private sector lawyers can justify a legal basis for a new trial on the relation claim.

**CONCLUSION**

Therefore, Ms. Adams respectfully requests that this Court uphold the jury verdict and deny Defendant's Motion for New Trial.

DATED: December 13, 2019

RESPECTFULLY SUBMITTED,

By: *Talonya Adams*
    Talonya Adams

1

## <u>CERTIFICATE OF SERVICE</u>

2

3       I hereby certify that on December 13, 2019, I electronically transmitted the

4   foregoing document to the Clerk's Office using the CM/ECF system for filing and e-mailed

5   a copy of the foregoing on November 13, 2019 to:

6   Michael Moberly
    One North Central Ave. Suite 1200
7   Phoenix, Arizona 85004
    mmoberly@rcalaw.com
8

9   _Talonya Adams_____
    Talonya Adams, Plaintiff
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

```
_____
| ✕ FILED ‾‾     ___ LODGED   |
| ___ RECEIVED ___ COPY       |
|                             |
|      JUL 1 2 2019           |
|                             |
| CLERK U S DISTRICT COURT    |
|   DISTRICT OF ARIZONA       |
| BY_____ DEPUTY  |
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
```

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Talonya Adams, | No.  CV-17-00822-PHX-DLR |
| Plaintiff, | |
| v. | **VERDICT** |
| Arizona Senate, | REDACTED |
| Defendant. | |

Nothing said in this Form of Verdict, which is prepared for your convenience, is meant to suggest or convey in any way or manner what verdict the Court thinks you should reach. It is solely and exclusively your duty and responsibility to decide what the verdict shall be.

We the jury, duly empaneled and sworn in the above entitled action, upon our oaths, make the following findings:

Question Number 1

Has Ms. Adams proven, by a preponderance of the evidence, that the Senate discriminated against her with respect to her pay and race was a motivating factor?

Yes __✓__     No _____

4618218.1
07/11/19

## Question Number 2

Has Ms. Adams proven, by a preponderance of the evidence, that the Senate discriminated against her with respect to her pay and sex was a motivating factor?

Yes  ✓          No _____

## Question Number 3

Has Ms. Adams proven, by a preponderance of the evidence, that the Senate discriminated against her with respect to her compensatory leave time and race was a motivating factor?

Yes  ✓          No _____

## Question Number 4

Has Ms. Adams proven, by a preponderance of the evidence, that the Senate discriminated against her with respect to her compensatory leave time and sex was a motivating factor?

Yes  ✓          No _____

## Question Number 5

Has Ms. Adams proven, by a preponderance of the evidence, that the Senate discriminated against her with respect to her annual leave accrual rate and race was a motivating factor?

Yes  ✓          No _____

## Question Number 6

Has Ms. Adams proven, by a preponderance of the evidence, that the Senate discriminated against her with respect to her annual leave accrual rate and sex was a motivating factor?

Yes  ✓          No _____

## Question Number 7

Has Ms. Adams proven, by a preponderance of the evidence, that she complained that she was being discriminated against on the basis of race or sex with respect to her pay and was terminated for that reason?

Yes ✓        No _____

If you answered "yes" to any of the foregoing questions, you should also answer Question Number 8. If you answered "no" to all of the foregoing questions, you are finished with this verdict form. The jury foreperson should date and sign the form, and return it to the Court.

## Question Number 8

What amount of emotional distress and/or loss of enjoyment of life (compensatory) damages, if any, did Ms. Adams suffer?

$ 1,000,000.00

When the jury has completed its work on this verdict form, the jury foreperson should date and sign the form, and return it to the Court.

Dated: 7|12|2019

#7

_____
FOREPERSON SIGNATURE

3